UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

BRUCE FLYNN,

                                        Plaintiff,

        v.                                                          9:15-CV-1028
                                                                    (GLS/CFH)

JOE WARD et al.,

                                        Defendants.

_____

APPEARANCES:

BRUCE FLYNN
10-A-1558
Plaintiff, pro se
Mid-State Correctional Facility
P. O. Box 2500
Marcy, New York 13403

GARY L. SHARPE
Senior United States District Judge

## DECISION AND ORDER

## I.      INTRODUCTION

        Pro se plaintiff Bruce Flynn commenced this civil rights action asserting claims arising

out of his confinement in the custody of the New York State Department of Corrections and

Community Supervision ("DOCCS").  Dkt. No. 1 ("Compl.").  In a Decision and Order filed

December 4, 2015 ("December Order"), the Court reviewed the complaint in accordance with

28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A, and determined that the complaint failed

to state a claim upon which relief could be granted and, therefore, was subject to dismissal.

Dkt. No. 11.  In light of his pro se status, plaintiff was afforded an opportunity to submit an

amended complaint.  *See* Dkt. No. 11 at 18.  Currently before the Court is plaintiff's amended

complaint.  Dkt. No. 20 ("Am. Compl.").

## II.     LEGAL STANDARD

The legal standard governing the dismissal of a pleading for failure to state a claim

pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A was discussed at length in the

December Order and it will not be restated in this Decision and Order.  *See* Dkt. No. 11 at 2-

3.  The Court will construe the allegations in plaintiff's amended complaint with the utmost

leniency.  *See, e.g.*, *Haines v. Kerner*, 404 U.S. 519, 521 (1972) (holding that a pro se

litigant's complaint is to be held "to a less stringent standards than formal pleadings drafted

by lawyers").

## III.     December Order and Amended Complaint[1]

Plaintiff, an inmate currently being held at Mid-State Correctional Facility ("Mid-State

C.F."), filed a complaint asserting claims against Joe Ward ("Ward"), Superintendent at Mid-

State C.F. and Lief Wellenstein ("Wellenstein"), Correctional Officer/Law Library Supervisor

at Mid-State C.F. *See generally* Compl.  In the December Order, the Court dismissed the

following, without prejudice: (1) claims that defendants denied plaintiff his right to access to

the courts in violation of the First Amendment; (2) claims that Wellenstein retaliated against

plaintiff in violation of his First Amendment rights; (3) claims that defendants violated DOCCS

Directives and the Facility Operations Manual; (4) claims related to plaintiff's FOIL request;

(5) supervisory claims against Ward; and (6) state law claims.  *See* Dkt. No. 11.

In the amended complaint, plaintiff names four new defendants: L. Goppert

---

[1] The amended complaint contains approximately 329 pages of exhibits.  *See* Dkt. Nos. 20-1 through 20-7.  The Court will consider the amended complaint as well as any documents attached as exhibits.  *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) (holding that the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference).

2

("Goppert"), Security Captain at Mid-State C.F.; Digert ("Digert"), Correctional Officer at Mid-State C.F.; Carpenter ("Carpenter"), Correctional Sergeant at Mid-State C.F.; and Tourtelot ("Tourtelot"), Nurse at Mid-State C.F.[2]  *See* Am. Compl. at 2, 3.

On November 15, 2010, plaintiff was transferred to DOCCS custody to serve a ten year term for burglary and criminal use of a firearm.  *See* Am. Compl. at 9.  At the relevant time, plaintiff was confined in the Long Term Protective Custody ("LTPC") Unit at Mid-State C.F.[3]  *See* Am. Compl.  In November 2010, the DOCCS Directive (#4833) regarding Law Library Services provided, in pertinent part:

> Cell Study Services: Inmates prohibited by their confinement status from visiting the Law Library shall be allowed to study Law Library materials in their cells and obtain legal services normally available to general population inmates.
>
> Such inmates may request, in writing, a maximum of two items per day and these will be delivered, if available, within 24 hours of receipt of the request.  Inmates may retain said legal materials for a period of not less than 16 hours nor more than 24 hours.

Dkt. No. 20-1 at 5.

Under the Cell Study Program, requests for legal materials are restricted to two per day.  *See* Am. Compl. at 15.  As a result, inmates in protective custody often incur a two or three month delay in obtaining material.  *See id.*

On October 3, 2011, Captain Admik[4] issued a memorandum to the security staff at Mid-State C.F. directing that inmates in the LTPC Unit be permitted physical access to the

---

[2] The Clerk of the Court is directed to add these defendants to the docket report for this action.

[3] The LTPC Unit is part of the Special Housing Unit ("SHU").  *See* Am. Compl. at 9.

[4] Captain Admik is not a defendant herein.

law library.[5]  *See* Am. Compl. at 9; Dkt. No. 20-1 at 2.

On September 5, 2014, the Inmate Law Library Procedures, as outlined in the Mid-State C.F. Facility Operations Manual (No. 21.04), provided, in relevant part:

> 3.  Inmates in SHU areas may request, in writing, legal assistance from the Law Library.
>
>> a.  All requests for assistance must be sent to the Law Library Officer via facility mail and each request should document what kind of service is needed.
>>
>> . . .
>>
>> c.  SHU inmates will only be allowed to have two (2) legal research resources in their possession at a time.  Pick-up and delivery of legal materials will be made on a daily basis, Monday through Sunday.

Dkt. No. 20-1 at 17.[6]

In October 2014, Wellenstein was designated as the law library officer.  *See* Am. Compl. at 11.  In November 2014 and December 2014, plaintiff had several arguments with Wellenstein over access to reference books available for SHU inmates, copies of legal work and printing court cases.  *See id.*  Wellenstein also insisted that plaintiff leave his legal work in the library.  *See id.*  One week after an argument with Wellenstein, plaintiff received a Tier II misbehavior report from C.O. Jordan ("Jordan") involving a razor.[7]  *See* Am. Compl. at 12, 13; Dkt. No. 20-7 at 3.  After a disciplinary hearing, plaintiff was sentenced to thirty days in

---

[5] The memorandum was copied to Superintendent Ward.  *See* Dkt. No. 20-1 at 2.

[6] Plaintiff refers to this as the "Cell Study Program."  *See* Am. Compl. at 15.

[7] Jordan is not a named defendant in this action.  The amended complaint does not contain facts related to the report and the report was not annexed as an exhibit to the amended complaint.

4

keeplock and a loss of privileges including phones, packages, commissary, and recreation.[8]
*See id.* Plaintiff served the entire sentence and appealed the determination.[9] *See* Am.
Compl. at 13.

On January 6, 2015, plaintiff filed a grievance claiming that Wellenstein interfered with
plaintiff's access to the courts when he refused to perform "word" and "key number
searches." *See* Am. Compl. at 13; Dkt. No. 20-3 at 11. As a result of Wellenstein's refusal
to perform the searches, plaintiff had to delay filing a habeas corpus petition and writ of error
coram nobis while he performed manual research on "outdated" digests. *See id.* On
January 20, 2015, plaintiff forwarded a memorandum to Carpenter, the Law Library
Supervisor, advising Carpenter that the stapler in the law library was inoperable and asked
for a replacement. *See* Dkt. No. 20-4 at 4.

In February 2015, plaintiff filed two grievances against Wellenstein claiming that
Wellenstein refused to make copies of legal documents. *See* Dkt. No. 20-3 at 8, 10.

On March 5, 2015, Goppert issued a Memorandum to the LTPC Population stating
that law library services would be modified to comply with the Facility Operations Manual.
Dkt. No. 20-1 at 3. LTPC inmates were advised to request, in writing, legal assistance from
the law library and to forward requests to the law library officer via facility mail. *See id.*
Consequently, plaintiff was forced to use the cell study program, controlled by Wellenstein,
which limited his legal research. *See* Am. Compl. at 15. Wellenstein deliberately and
intentionally restricted access to materials by delivering the wrong materials or delivering the

---

[8] The amended complaint lacks any facts related to the hearing.

[9] The amended complaint does not include information related to when or to whom plaintiff filed his appeal.

same material multiple times. *See id.* Wellenstein also denied requests for materials on Friday, Saturday and Sunday. *See id.* As a result, plaintiff was prevented from filing his habeas corpus petition and writ of error coram nobis, which could have reduced his prison time. *See id.*

On March 10, 2015, plaintiff filed a grievance against Wellenstein for failing to provide a list of books available to SHU inmates and tax forms. *See* Am. Compl. at 16; Dkt. No. 20-3 at 12. On March 13, 2015, plaintiff received a misbehavior report, issued by C.O. Miller, for smoking.[10] *See id.* As a result of the report, plaintiff was sentenced to keeplock for six days with a loss of phone privileges. *See id.*

On April 5, 2015, plaintiff filed a grievance claiming that Wellenstein committed fraud, destroyed his property, refused to provide envelopes, a stapler or hole punch for legal papers, refused to answer requests for legal material on the weekends, denied plaintiff legal supplies and denied plaintiff access to current legal materials. *See* Dkt. No. 20-3 at 15-21. On April 28, 2015, plaintiff filed a grievance against Wellenstein claiming that Wellenstein was harassing plaintiff and deliberately destroying plaintiff's documents related to plaintiff's error coram nobis and habeas corpus petition. *See* Dkt. No. 20-3 at 34.

On April 30, 2015, Wellenstein entered plaintiff's cell, without plaintiff's permission and "pushed [plaintiff] aside." *See* Am. Compl. at 17; Dkt. No. 20-3 at 42. On the same day, plaintiff filed a grievance with respect to the incident. Plaintiff described the occurrence as follows:

> On 4/30/15 after having me sign for materials through the feed up port. He said he could smell smoke. He opened my cell

---

[10] The report is not part of the exhibits annexed to the complaint. Miller is not a defendant herein.

> door and pushed me aside and came into my cell. Wellenstein
> looked around my cell made a couple of smart remarks then
> left.

Dkt. No. 20-3 at 42.

On the same day, plaintiff received a misbehavior report from Wellenstein related to

the incident.[11]  *See* Am. Compl. at 17.  As a result of the report, plaintiff was confined to

keeplock for nineteen days with a loss of privileges.  *See id.*

On May 8, 2015, Wellenstein appeared at plaintiff's cell shouting "threats."  *See* Am.

Compl. at 18.  Wellenstein called plaintiff names and threatened plaintiff with violence and

misbehavior reports.  *See id.*  On May 11, 2015, plaintiff field a grievance related to the

incident.  *See id.*; Dkt. No. 20-3 at 44.  On May 14, 2015, plaintiff filed a grievance against

Wellenstein for failing to provide books related to mental health treatment and property

rights.  *See* Am. Compl. at 19; Dkt. No. 20-3 at 46.  On the same day, plaintiff filed a second

grievance complaining that he could not order legal materials on Saturday and Sunday due

to mail restrictions.  *See* Am. Compl. at 19; Dkt. No. 20-3 at 47.

On May 26, 2015, plaintiff sent correspondence to Dr. Liu ("Liu") at Mid-State C.F.,

stating that he asked defendant, Nurse Practitioner Tourtelot ("Tourtelot") to provide plaintiff

with his 2013 medications because the current level of his medication was not strong enough

to calm his nerves and anxiety.[12]  *See* Dkt. No. at 20-6 at 73.  Despite plaintiff's repeated

requests, Tourtelot refused to increase plaintiff's medication.  *See* Am. Compl. at 39.

On July 21, 2015, plaintiff filed a grievance against Wellenstein for refusing to provide

---

[11] The misbehavior report is not part of the record herein.

[12] In September 2012, plaintiff was diagnosed with schizoaffective disorder, depressed type.  *See* Am.
Compl. at 41-42.  Liu is not a defendant herein.

7

plaintiff with envelopes, intentionally making distorted copies and tampering with his mail. *See* Am. Compl. at 19; Dkt. No. 20-6 at 2-3.

On August 1, 2015, plaintiff filed a grievance against Wellenstein for failing to provide copies of cases. *See* Am. Compl. at 20; Dkt. No. 20-6 at 4. On the same day, plaintiff received two misbehavior reports. The first report charged plaintiff with violating the rules pertaining to smoking[13] and the second misbehavior report, from Wellenstein, charged plaintiff with failing to obey a direct order. *See* Am. Compl. at 20; Dkt. No. 20-6 at 5, 6. On August 7, 2015, plaintiff filed a grievance against Wellenstein for failing to make copies of legal documents. *See* Am. Compl. at 21.; Dkt. No. 20-6 at 7. Plaintiff claimed that Wellenstein was acting in retaliation for plaintiff's grievances against him. *See id.* Ward responded and denied the grievance noting that plaintiff had not, "substantiated his claim that he has been the victim of harassment by staff." *See* Dkt. No. 20-6 at 53. On August 17, 2015, plaintiff received a misbehavior report charging plaintiff with placing a three-way call in violation of facility phone procedures.[14] *See* Dkt. No. 20-6 at 8. As a result of the misbehavior report, plaintiff was confined in keeplock for eighteen days with a loss of privileges. *See* Am. Compl. at 21. On August 20, 2015, plaintiff filed a grievance complaining that he was being harassed and threatened by Wellenstein. *See id.*; Dkt. No. 20-6 at 10. On August 22, 2015, plaintiff filed a grievance stating Wellenstein refused to provide large manilla envelopes for plaintiff to mail his legal work. *See id.*; Dkt. No. 20-6 at 11. On August 24, 2015, plaintiff received a misbehavior report from Wellenstein charging

---

[13] The name of the officer who reported this violation is illegible. Dkt. No. 20-6 at 6. However, plaintiff does not contend that the report was issued by Wellenstein.

[14] The misbehavior report was not issued by Wellenstein.

plaintiff with harassment and threats.  Dkt. No. 20-6 at 12.

On September 16, 2015, plaintiff filed a grievance claiming that Wellenstein destroyed forty-five pages of legal exhibits.  *See* Am. Compl. at 32.  On September 18, 2015, Goppert issued a memorandum stating that, as of September 22, 2015, LTPC inmates would be allowed physical access to the law library.  *See id.* at 22.  On September 27, 2015, C.O. Kiernan,[15] Wellenstein's friend, issued a misbehavior report charging plaintiff with smoking. *See id.*

On October 23, 2015, plaintiff filed a grievance claiming that Wellenstein placed a sign on the copier indicating that it was "not in use" and refused to give the relief officer the password for the copier.  Dkt. No. 20-6 at 14.  As a result, plaintiff had to "remake" pages and have "10 copies re-notarized."  *See* Dkt. No. 20-6 at 14.

On November 6, 2015, plaintiff filed a grievance against Wellenstein claiming that he refused to make copies and routinely closed the library early.  Dkt. No. 20-6 at 15.  On November 12, 2015, another inmate set fire to plaintiff's cell.  *See* Am. Compl. at 33.  On the same day, plaintiff received a misbehavior report, issued by U. Upshaw ("Upshaw"),[16] charging him with smoking, arson, making false statements, and possessing flammable materials.  *See id.*; Dkt. No. 20-6 at 24.  The charges in the misbehavior report were dismissed after plaintiff was confined in keeplock for eight days.  *See* Am. Compl. at 40. After the incident, plaintiff cleaned his old cell but Goppert refused to allow plaintiff to return to his cell.  *See id.*  Instead, plaintiff was forced to occupy the second cell on the company,

---

[15] Kiernan is not a defendant in this action.

[16] Upshaw is not a defendant in this action.

next to the cell used as the inmate bathroom. *See id.* Plaintiff filed numerous complaints with the security staff regarding his placement in a cell where he was "constantly harassed by other inmates" and subjected to slamming doors, banging on the walls and defamatory remarks. *See id.* at 40-41.

On November 18, 2015, Wellenstein issued a misbehavior report charging plaintiff with harassment. *See* Dkt. No. 20-6 at 16. On November 19, 2015, plaintiff's cell was searched. *See* Am. Compl. at 34. During the search, the officers walked on his legal work and dumped his work into a pile with trash on top of it. *See id.* Plaintiff's envelopes were confiscated and plaintiff's Koran was thrown in the garbage and removed from his cell. *See id.* On November 22, 2015, plaintiff's cell was searched and his legal work was placed in draft bags. *See id.*

On December 11, 2015, plaintiff received a misbehavior report from Wellenstein charging plaintiff with harassment and failing to obey a direct order. *See* Am. Compl. at 34; Dkt. No. 20-6 at 26. On December 8, 2015 and December 23, 2015, Wellenstein disposed of a list of cases that plaintiff printed related to a decision and order in the civil rights action presently before this court. *See* Am. Compl. at 35. On December 15, 2015, Ward issued a decision denying plaintiff's November 18, 2015 grievance regarding "inefficient operation in law library."[17] *See* Dkt. No. 20-6 at 55. Ward found that plaintiff failed to substantiate his claim that he was the victim of harassment. Dkt. No. 20-6 at 55.

On January 4, 2015, plaintiff was forced to submit to a "urine analysis." *See* Am. Compl. at 35. On January 14, 2016, plaintiff filed a grievance claiming that the photocopier

---

[17] The November 18, 2015 grievance is not annexed as an exhibit to the amended complaint.

was not operating correctly because Wellenstein manipulated the memory function. Dkt. No. 20-6 at 60. On January 6, 2016, plaintiff filed a grievance related to his cell location claiming that he receives verbal abuse from other inmates.[18] *See* Am. Compl. at 41. On January 15, 2016, Ward responded and denied the grievance noting that plaintiff was not entitled to the housing and/or bed location of his choice. *See id.*; Dkt. No. 20-6 at 58.

On January 14, 2016, plaintiff had a medical appointment and, at 8:30 A.M., plaintiff was waiting for the medical trip officers to escort him to the appointment. *See* Am. Compl. at 42. At 8:30 A.M., 9:30 A.M., 10:30 A.M. and 12:30 P.M., defendant Corrections Officer Digert ("Digert") repeatedly told plaintiff that the "trip officers were coming." *See id.* When the trip officers failed to appear, plaintiff assumed that the medical appointment was cancelled and, being a diabetic, plaintiff decided to eat and drink a cup of coffee. *See id.* at 42-43. At approximately 1:45 P.M., plaintiff was transferred to a local hospital for a heart test. *See id.* at 43. Upon arrival, plaintiff was advised that the test could not be performed and needed to be rescheduled because plaintiff drank coffee. *See id.* Plaintiff was deemed to have "refused" the appointment. *See* Am. Compl. at 36, 42.

From 2010 until January 2016, plaintiff had a prayer rug in his cell. *See* Am. Compl. at 37. On January 16, 2016, Carpenter told plaintiff that he did not have the proper permits for the rug and confiscated the rug because plaintiff was not a registered Muslim.[19] *See id*. Plaintiff asked to retain his rugs until he filed the proper form and a grievance but his request was denied. *See* Am. Compl. at 37. Plaintiff was compelled to mail the prayer rug to his

---

[18] The grievance was not annexed as an exhibit to the complaint.

[19] Plaintiff concedes that he changed he never filed a change of religion form. *See* Am. Compl. at 37.

11

home. *See id.*

On January 18, 2016, at approximately 4:00 P.M., someone "slammed plaintiff's cell door" causing a coffee cup to spill onto plaintiff's legal work. *See* Am. Compl. at 38. Plaintiff's legal work was destroyed. *See id.* Plaintiff assumed that the person who slammed the door was Inmate Donah and retaliated by dropping a tray of milk in Donah's cell. *See id.* at 44. At 9:05 P.M., Donah assaulted plaintiff while plaintiff was in the recreation room and a fight ensured. *See id.* at 44. Plaintiff later learned that Wellenstein slammed plaintiff's cell door shut. *See* Am. Compl. at 38, 44. After the assault, without a disciplinary hearing, plaintiff was locked in his cell and his property, including legal work, was confiscated. *See id.* Plaintiff's property was placed in a storage room. *See id.* On January 23, 2016, plaintiff's property was returned to him, but his file related to his Section 1983 civil rights complaint was missing. *See id.*

Construed liberally, the amended complaint contains the following claims: (1) Wellenstein, Goppert and Ward violated plaintiff's First Amendment right to access to the courts; (2) Wellenstein violated plaintiff's Eighth Amendment rights with use of excessive force; (3) Digert and Tourtelot were deliberately indifferent to plaintiff's serious medical needs in violation of plaintiff's Eighth Amendment rights; (4) conditions of confinement claims; (5) Carpenter and Goppert violated plaintiff's First Amendment rights to religious freedom; (6) Ward and Wellenstein denied plaintiff's FOIL requests; (7) plaintiff's property was destroyed in violation of his constitutional rights; (8) defendants retaliated against plaintiff in violation of his First Amendment rights; and (9) supervisory claims against Carpenter, Ward and Goppert. *See* Am. Compl.

**IV.    Analysis**

**A.    Access to Court Claims**

The Court discussed the law pertaining to First Amendment claims and access to the courts in the December Order.  *See* Dkt. No. 11 at 5-6.  The Court dismissed plaintiff's access to court claims holding:

> Here, plaintiff alleges that he was denied access to the courts because he would not "be able to address conditions of confinement, appeals, and the ability to respond to the Attorney General now or in the future, or be able to submit any effective brief's [sic] and memorandums of law." *See* Compl. at 10. Plaintiff also claims that he was not able to bind any of his briefs or documents due to defendants' failure to provide supplies. *Id*. at 6.  Plaintiff does not state any facts to plausibly suggest that he suffered any injury related to a legal claim or material prejudice as a result of defendants' actions, or inactions. The complaint lacks facts establishing that defendants' misconduct resulted in "actual harm" such as the "the dismissal of an otherwise meritorious legal claim." *See Cancel v. Goord*, No. 00 Civ 2042, 2001 WL 303713, at *4 (S.D.N.Y. March 29, 2001) ("[I]n order to survive a motion to dismiss [an access-to-the-courts claim] a plaintiff must allege not only that the defendant's conduct was deliberate and malicious, but also that the defendant's actions resulted in actual injury to the plaintiff such as the dismissal of an otherwise meritorious legal claim.").

Dkt. No. 11 at 6.

In the amended complaint, plaintiff reasserts his allegations against Wellenstein and pleads additional facts and a cause of action against Ward and Goppert.

**1.    Wellenstein**

Plaintiff claims that Wellenstein infringed upon his First Amendment right to access to the courts.  Plaintiff also claims that Wellenstein knew that the law library was inadequate and refused to correct the deficiencies.  *See id.* at 30.  In the amended complaint, plaintiff

claims that from November 2014 until January 2016, Wellenstein refused to provide plaintiff with legal materials including books, computer assistance, supplies, copies of cases and exhibits for legal submissions. *See* Am. Compl. at 11, 14, 20, 21. Plaintiff also alleges that Wellenstein deliberately "mixed up" and destroyed legal exhibits, played the radio in the library to disrupt inmates and closed the library early. *See id.* at 13, 15, 20, 23, 25, 33, 38. As the supervisor of the Cell Study Program, Wellenstein delivered the wrong materials and refused to accept legal requests on Friday, Saturday, and Sunday. *See id.* at 15, 23 and 25. With respect to the library, the books have not been updated since 2011 and the Law Journal Magazine is the only publication available to LTPC inmates that contains current caselaw and court decisions. *See* Am. Compl. at 30.

As a result of Wellenstein's actions, plaintiff asserts that he was prevented from filing a writ of error coram nobis, a petition for habeas corpus relief, a petition with the Department of Veterans' Affairs, an Article 78 petition and an appeal with the New York State Retirement System. *See* Am. Compl. at 10, 11, 35, 39, 46, 47. Plaintiff also alleges that his submissions in his Court of Claims case and in the civil matter currently before this court were delayed as a result of defendants' actions. *See* Am. Compl. at 24, 32, 34, 35, 45.

At this juncture, the Court finds that plaintiff's First Amendment access to court claims against Wellenstein survive sua sponte review and require a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed motion to dismiss or for summary judgment.

### 2. Ward and Goppert

Plaintiff contends that Goppert and Ward violated his First Amendment rights because

he was denied plaintiff physical access to the law library.[20]  *See* Am. Compl. at 26.

The constitutional right to access to the courts encompasses the right to meaningful access to legal materials, not physical access to a law library.  *See Benjamin v. Jacobson*, 923 F.Supp. 517, 522 (S.D.N.Y. 1996) (citing *Bounds v. Smith*, 430 U.S. 817, 823 (1977)). Here, plaintiff has failed to plead facts suggesting that defendants violated his constitutional rights by restricting him to the cell study program from March 2015 until September 2015. *See Clanton v. Horn*, 2009 WL 1285868, at *1 (S.D.N.Y. May 4, 2009) (finding no constitutional violation in cell study program as the plaintiff was provided an "adequate alternative means of performing legal research.").

Consequently, plaintiff's First Amendment claims against Ward and Goppert are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.[21]

**B.    Eighth Amendment Claims**

**1.    Excessive Force**

The Eighth Amendment's prohibition against cruel and unusual punishment encompasses the use of excessive force against an inmate, who must prove two components:  (1) subjectively, that the defendant acted wantonly and in bad faith, and (2) objectively, that the defendant's actions violated "contemporary standards of decency." *Blyden v. Mancusi*, 186 F.3d 252, 262-63 (2d Cir. 1999) (internal quotations omitted) (citing

---

[20] In March 2015, Goppert issued a memorandum prohibiting LTPC inmates from having physical access to the law library.  *See* Dkt. No. 20-1 at 3.  On September 18, 2015, Goppert issued a memorandum directing that LTPC inmates have physical access to the law library.  *See* Am. Compl. at 22.

[21] Plaintiff also alleges that Goppert implemented a policy by which legal requests would not be picked up on Friday, Saturday, and Sunday and Ward "knew the law library was inadequate."  *See* Am. Compl. at 19, 30.  These allegations are discussed in Part IV(F), *infra.*

*Hudson v. McMillian*, 503 U.S. 1, 8 (1992)). In this regard, while "a *de minimis* use of force will rarely suffice to state a constitutional claim," *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993), the malicious use of force to cause harm constitutes an Eighth Amendment violation per se because in such an instance "contemporary standards of decency are always violated." *Blyden*, 186 F.3d at 263 (citing *Hudson*, 503 U.S. at 9). The key inquiry into a claim of excessive force is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7 (citing *Whitley v. Albers*, 475 U.S. 312, 321-22 (1986)); *see Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973); *see also Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (per curiam) explaining that the nature of the force applied is the "core judicial inquiry " in excessive force cases—not "whether a certain quantum of injury was sustained"). "Accordingly, when considering the subjective element of the governing Eighth Amendment test, a court must be mindful that the absence of serious injury, though relevant, does not necessarily negate a finding of wantonness." *Wynter v. Ramey,* No. 11-CV-0257 (DNH/DEP), 2013 WL 5465343, at *5 (N.D.N.Y. Sept. 30, 2013) (citations omitted).

In this case, plaintiff claims that Wellenstein "assaulted" him on April 30, 2015. *See* Am. Compl. at 17. Plaintiff makes no specific accusation regarding the force exerted but summarily states that Wellenstein "assaulted [him] by pushing me around my cell." *See id.* Plaintiff's grievance, filed on the same day, belies his excessive force claims. In the grievance, plaintiff stated that Wellenstein, "opened my cell door and pushed me aside and came into my cell." *See* Dkt. No. 20-3 at 42. Plaintiff did not describe the incident as an "assault" or an "attack" and did not suggest that the use of force was more than de minimis.

*See Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) (holding that the plaintiff's allegations that he was "bumped, grabbed, elbowed, and pushed" by the defendants did not "approach an Eighth Amendment claim").  Plaintiff's allegations against Wellenstein fail to suggest that Wellenstein used malicious force that caused plaintiff harm.  Consequently, plaintiff's Eighth Amendment excessive force claims are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 2.    Deliberate Indifference to Serious Medical Needs

To state an Eighth Amendment claim for medical indifference, a plaintiff must allege that the defendant was deliberately indifferent to a serious medical need.  *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  Deliberate indifference has two necessary components, one objective and the other subjective.  *See Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996).  The objective component of an Eighth Amendment deliberate indifference claim "requires that the alleged deprivation must be sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists." *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (quoting *Hathaway*, 99 F.3d at 553) (internal quotation marks omitted).  Under the subjective element, medical mistreatment rises to the level of deliberate indifference only when it "involves culpable recklessness, i.e., an act or a failure to act . . . that evinces 'a conscious disregard of a substantial risk of serious harm.'"  *Chance v. Armstrong*, 143 F. 3d 698, 703 (2d Cir. 1998) (quoting *Hathaway*, 99 F.3d at 553).  "Deliberate indifference requires more than negligence but less than conduct undertaken for the very purpose of causing harm."  *Hathaway v. Coughlin*, 37 F.3d 63, 66

(2d Cir. 1994). To assert a claim for deliberate indifference, an inmate must allege that (1) a prison medical care provider was aware of facts from which the inference could be drawn that the inmate had a serious medical need; and (2) the medical care provider actually drew that inference. *Farmer*, 511 U.S. at 837; *Chance*, 143 F.3d at 702. The inmate must also demonstrate that the provider consciously and intentionally disregarded or ignored that serious medical need. *Farmer*, 511 U .S. at 835.

Here, plaintiff claims that he is diabetic and suffers from chest pains, anxiety, depression, and stress. *See* Am. Compl. at 39, 43. Even assuming that plaintiff suffered from a serious medical need, plaintiff must allege facts suggesting that defendants acted with the necessary culpable state of mind.

### a.    Digert

Plaintiff claims that due to Digert's deliberate and intentional conduct, plaintiff's heart stress test was cancelled and rescheduled. *See* Am. Compl. at 36, 42. As a result, plaintiff suffered from constant and "prolonged" chest pains. *See id.* "Non-medical prison personnel engage in deliberate indifference where they 'intentionally delayed access to medical care when the inmate was in extreme pain and has made his medical problem known to the attendant prison personnel.'" *Baumann v. Walsh*, 36 F. Supp. 2d 508, 512 (N.D.N.Y. 1999). Here, the amended complaint does not suggest that plaintiff was in any pain while he awaited his transport to the hospital for the stress test. The amended complaint is void of any facts suggesting that Digert knew that plaintiff suffered from any serious medical condition or that plaintiff sustained any substantial harm or pain due to the delay in transporting plaintiff. Plaintiff does not claim that he voiced any concern to Digert about the

18

delay.  *Cf. Hoover v. Hardman*, No. 99-CV-1855 (FJS), 2005 WL 1949890, at *6 (N.D.N.Y. Aug. 15, 2005) (finding an issue of fact where the plaintiff claimed that the defendant delayed his access to medical care with the knowledge that the plaintiff was in extreme pain). Moreover, plaintiff does not allege the Digert knew that plaintiff was diabetic or that Digert somehow forced or compelled plaintiff to "have something to eat and a cup of coffee." Rather, that was plaintiff's decision and, as a result, his stress test states was rescheduled. *See* Am. Compl. at 43.  Nothing in the amended complaint suggests that Digert was deliberately indifferent to plaintiff's medical needs.

Plaintiff's Eighth Amendment deliberate indifference claims against Digert are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### b.    Tourtelot

Plaintiff claims that Tourtelot was deliberately indifferent to his medical needs when she refused to provide plaintiff with his "2013 medications."  *See* Am. Compl. at 39.  Plaintiff has not plead facts suggesting that Tourtelot was aware that withholding unspecified medication would result in an excessive risk to plaintiff's health or that defendant acted with the necessary culpable state of mind.  *See Baskerville v. Blot,* 224 F. Supp. 2d 723, 735-36 (S.D.N.Y. 2002) (dismissing Eighth Amendment claim because the plaintiff's assertions did not suggest that the defendant "acted intentionally to withhold prescribed medication or was in any way responsible for the delay in obtaining a refill of his medication from the outside pharmacy").  Plaintiff's allegation amounts to nothing more than a quarrel over the nature of his treatment.  *See Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir.1998) ("Courts have

repeatedly held that disagreements over treatment do not rise to the level of a Constitutional violation.").  Plaintiff's Eighth Amendment deliberate indifference claims against Tourtelot are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 3.    Conditions of Confinement

From March 13, 2015 through January 31, 2016, plaintiff was placed in keeplock confinement, with a loss of recreation, for a total of 108 days.  *See* Am. Compl. at 42.  As a result, plaintiff suffered from severe mental disorders and "many other symptoms."  *See id.* Even assuming plaintiff's allegations are sufficient to satisfy the objective prong of the Eighth Amendment analysis, the complaint lacks facts establishing which correctional officers were responsible or personally involved in the alleged unconstitutional conditions.  It is well settled that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."  *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)).  Thus, "a Section 1983 plaintiff must 'allege a tangible connection between the acts of the defendant and the injuries suffered.'"  *Austin v. Pappas*, No. 04-CV-7263, 2008 WL 857528, at *2 (S.D.N.Y. Mar. 31, 2008) (quoting *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986)) (other citation omitted).  Here, plaintiff does not identify who was responsible for his keeplock confinement, whether he complained about his conditions of confinement and, if so, to whom he forwarded complaints.  Plaintiff has not pleaded any facts against the defendants related to his conditions of confinement and thus, has failed to sufficiently allege that any defendant acted with a deliberate state of mind.  Consequently, plaintiff's Eighth Amendment claims

related to his conditions of confinement are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim. *See Toliver v. Dep't of Corrs*., No. 10 Civ. 6298, 2012 WL 4510635, at *9 (S.D.N.Y. Apr. 10, 2012) (dismissing the deliberate indifference claim for failure to plead facts identifying a responsible official who acted with a sufficiently culpable state of mind).

## C.      First Amendment Religious Freedom Claims

Plaintiff claims that Carpenter and Goppert denied plaintiff the right to exercise his religious beliefs when they confiscated plaintiff's prayer rug.  *See* Am. Compl. at 51. Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause.  *See Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003) (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)); *see also Nolley v. County of Erie*, No. 07-CV-488S, 2008 WL 859165 (W.D.N.Y. Mar. 31, 2008) (applying First Amendment freedom of religion protections to a pretrial detainee). "Balanced against the constitutional protections afforded prison inmates, including the right to free exercise of religion, [however,] are the interests of prison officials charged with complex duties arising from administration of the penal system." *Id*. (citing *Benjamin v. Coughlin*, 905 F.2d 571, 574 (2d Cir. 1990)).  To state a First Amendment Free Exercise claim, a plaintiff must allege that (1) the practice asserted is religious in the person's scheme of beliefs, and that the belief is sincerely held; (2) the challenged practice of the prison officials infringes upon the religious belief; and (3) the challenged practice of the prison officials furthers some legitimate penological objective.  *Farid v. Smith*, 850 F.2d 917, 926 (2d Cir.1988) (citations omitted).  A prisoner "must show at the threshold that the disputed conduct substantially burdens his

sincerely held religious beliefs." *Salahuddin v. Goord*, 467 F.3d 263, 274–75 (2d Cir. 2006) (citing *Ford*, 352 F.3d at 591). A religious belief is "sincerely held" when the plaintiff subjectively, sincerely holds a particular belief that is religious in nature. *Ford*, 352 F.3d at 590. A prisoner's sincerely held religious belief is "substantially burdened" where "the state puts substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Jolly v. Coughlin*, 76 F.3d 468, 476–77 (2d Cir.1996). Once a plaintiff establishes that a sincerely held religious belief has been substantially burdened,"[t]he defendants then bear the relatively limited burden of identifying the legitimate penological interests that justify the impinging conduct; the burden remains with the prisoner to show that these articulated concerns were irrational." *Salahuddin*, 467 F.3d at 275 (quoting *Ford*, 352 F.3d at 595) (punctuation omitted).

Here, the amended complaint lacks any facts establishing that plaintiff's religious beliefs were "sincerely held" or that his beliefs were "substantially burdened." Indeed, the complaint contains nothing more than vague accusations that plaintiff was forced to send his rug home and is "still without a prayer rug to say his prayer's [sic]" without dates, times or facts establishing how he was burdened. The allegations, without more, fail to plausibly suggest that Carpenter or Goppert burdened plaintiff's right to freely practice his religion. Thus, plaintiff's First Amendment claims against are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.[22]

---

[22] To the extent that the amended complaint could be construed as asserting a claim for a First Amendment violation based upon the allegation that plaintiff's Koran was thrown in the garbage and removed from his cell during the November 2015 cell search, that claim is subject to dismissal. The amended complaint does not contain any facts related to who was responsible for this action. Indeed, the amended complaint lacks any facts identifying any officer involved in the cell search.

## D.     FOIL Requests

In the amended complaint, plaintiff claims that he filed twelve FOIL requests for the following documents: Captain Goppert's March 2015 memorandum; all grievances filed related to the law library; Directive 4933; facility operations manual; legal materials request forms; and legal materials sign out sheet for April 20, 2015 and April 21, 2015.  *See* Am. Compl. at 31, 47; Dkt. No. 20-4 at 20-25.

A violation of New York State FOIL does not give rise to a federal claim under Section 1983.  *Sonds v. Cuomo*, No. 9:11-CV-0895 (NAM/ATB), 2012 WL 952540, at *3 (N.D.N.Y. Feb. 3, 2012) ("Plaintiff's state FOIL request cannot be the basis of a federal action."); *see also Pollnow v. Glennon*, 757 F.2d 496, 501 (2d Cir. 1985) ("Clearly, a violation of state law is not cognizable under § 1983.").  "The appropriate vehicle for challenging denials of access guaranteed by the New York Freedom of Information law is a state court proceeding pursuant to N.Y.C.P.L.R. Article 78 upon exhaustion of administrative remedies."  *Schuloff v. Fields*, 950 F. Supp. 66, 67-68 (E.D.N.Y. 1997); *Posr v. City of N.Y.*, No. 10-CV-2551, 2013 WL 2419142, at *14 (S.D.N.Y. June 4, 2013) ("Under New York state law, if an agency or government official fails to comply with the provisions of FOIL, the person submitting the FOIL request must pursue an administrative appeal or seek remedies in state court pursuant to N.Y. C.P.L.R. Article 78." (citing N.Y. Pub. Off. Law § 89)).

Accordingly, plaintiff's claim that defendants violated FOIL is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted pursuant to Section 1983.

## E.     Destruction of Property

Plaintiff claims that his property was destroyed during the January 2015 cell search. *See* Am. Compl. at 38. The Supreme Court has held that the unauthorized intentional destruction of prisoner's property may not be the basis for constitutional claims if sufficient post deprivation remedies are available to address the claim. *Hudson v. Palmer*, 468 U.S. 517, 531 (1984) (citing *Parratt v. Taylor*, 451 U.S. 527, 541 (1981)); *see Rivera-Powell v. N.Y.C. Bd. of Elections*, 470 F.3d 458, 465 (2d Cir. 2006) ("When the state conduct in question is random and unauthorized, the state satisfies procedural due process requirements so long as it provides meaningful post deprivation remedy."); *Davis v. New York*, 311 F. App'x 397, 400 (2d Cir. 2009) ("An alleged loss of property, 'whether intentional or negligent - will not support a due process claim redressable under § 1983 if adequate state post-deprivation remedies are available.'") (quoting *Hudson*, 468 U.S. 533). "New York in fact affords an adequate post-deprivation remedy in the form of, *inter alia*, a Court of Claims action." *Jackson v. Burke*, 256 F.3d 93, 96 (2d Cir. 2001). Because plaintiff has access to adequate state law remedies, he has not been deprived of property without due process of law and therefore cannot state a claim for relief pursuant to Section 1983. *See Love v. Coughlin*, 714 F.2d 207, 208-09 (2d Cir. 1983) (per curiam). Plaintiff's claims are also subject to dismissal as plaintiff failed to identify any individual involved in or responsible for the cell search. For the reasons set forth herein and in Part IV(B)(3), plaintiff's claim that defendants destroyed his property is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted pursuant to Section 1983

## F.    Supervisory Claims

In the original complaint, plaintiff alleged that Ward was personally involved in the constitutional violations because he reviewed plaintiff's grievance appeals and was responsible for the "care and custody of inmates." *See* Compl. at 11. In the December Order, the Court discussed the law related to supervisory liability. *See* Dkt. No. 11 at 10-12. The Court dismissed plaintiff's claims holding:

> Even assuming plaintiff sufficiently pleaded a constitutional violation, plaintiff's claims against Ward are subject to dismissal as the allegations are nothing more than legal conclusions, unsupported by any facts. The complaint lacks any facts establishing that Ward was personally involved in any decision related to plaintiff's use of the law library or access to legal materials. The conclusory assertion that Ward was responsible for "grievance appeals" is unsupported by the 237 pages of exhibits or any facts that plausibly suggest that Ward was "confronted with a situation that he failed to remedy."

*Id.* at 12.

In the amended complaint, plaintiff attempts to cure the deficiencies in his allegations against Ward and asserts new supervisory claims against Goppert and Carpenter.

### 1. Ward

Plaintiff reiterates his claim that Ward was aware of Wellenstein's actions because he responded to plaintiff's grievances. *See* Am. Compl. at 23, 27, 31. Plaintiff also contends that Ward knew that the law library was inadequate. "[C]ourts in this circuit have held that personal involvement may be found where a supervisor receives, reviews, and responds to a plaintiff's grievance." *Lewis v. Wallace*, No. 9:11-CV-0867 (DNH/DEP), 2013 WL 1566557, at *5 (N.D.N.Y. Feb. 22, 2013) (collecting cases) *report and recommendation adopted*, No. 9:11-CV-0867 DNH/DEP, 2013 WL 1566555 (N.D.N.Y. Apr. 12, 2013).

Plaintiff identified four grievances that he filed against Wellenstein in August 2015,

25

and December 2015 and annexed copies of Ward's responses to those grievances. *See* Dkt. No. 20-6 at 53, 55. In those grievances, plaintiff refers to Wellenstein's alleged retaliatory conduct and the inefficient operation in the law library. *See id.* At this juncture, the Court finds that plaintiff's supervisory claims against Ward survive sua sponte review and require a response. In so ruling, the Court expresses no opinion as to whether this claim can withstand a properly filed motion to dismiss or for summary judgment.

## 2. Goppert

In the amended complaint, plaintiff claims that Goppert was aware of Wellenstein's harassment because Goppert responded to plaintiff's appeals related to his disciplinary hearings. *See* Am. Compl. at 23, 27, 31, 40, 44. "[W]hile personal involvement cannot be founded solely on supervision, liability can be found if the official proactively participated in reviewing the administrative appeals as opposed merely to rubber-stamping the results." *Woodward v. Mullah*, No. 08–CV–0436A, 2009 WL 4730309, at * 2–3 (W.D.N.Y. Dec.7, 2009) (quoting *Hamilton v. Smith*, 2009 WL 31995331, at * 22 (N.D.N.Y. 2009), *report and recommendation adopted as modified*, 2009 WL 3199520). The amended complaint lacks facts to plausibly suggest that Goppert reviewed any appeal. Indeed, the amended complaint is void of any facts related to any disciplinary hearings or appeals including when, where or how plaintiff appealed. Without such allegations, plaintiff has failed to plead that Goppert investigated or reviewed his appeals to establish personal involvement in any constitutional violation. *See Brown v. Brun*, No. 10-CV-0397A, 2010 WL 5072125, at *3 (W.D.N.Y. Dec. 7, 2010) (holding that the allegation that the defendant upheld the hearing, without more, was insufficient to state a claim against the defendant).

Plaintiff also claims that Goppert implemented a policy inconsistent with Section 21.04 of the Facilities Operation Manual because he "told law library officers they did not have to pick up request forms on weekends." *See* Am. Compl. at 19. In support of his claims against Goppert, plaintiff annexed copies of correspondence addressed to Goppert wherein plaintiff advised that his legal requests were not being picked up on the weekends and claimed that Wellenstein intentionally destroyed his legal exhibits. *See* Dkt. No. 20-4 at 12, 14. The Second Circuit has cautioned against dismissing claims for failure to allege personal involvement without granting leave to amend where the plaintiff may allege that an official failed to respond to a letter of complaint. *Grullon v. City of New Haven,* 720 F.3d 133, 141 (2d Cir. 2013) (holding that a prisoner's letter of complaint sent to a prison warden "at an appropriate address and by appropriate means" would suffice to state facts plausibly suggesting personal involvement). While cognizant of *Grullon*, the Court finds that, as presently pleaded, plaintiff has failed to establish that Goppert was personally involved in any constitutional deprivation. While the memoranda contain Goppert's name, plaintiff has failed to plead facts establishing where the memoranda were sent, by what means they were forwarded and what response, if any, he received from Goppert. Without more, the allegations are not enough to allege personal involvement in any constitutional deprivation. *See Guillory v. Cuomo*, 616 F. App'x 12, 14 (2d Cir. 2015) (summary order). Plaintiff's supervisory claims against Goppert are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 3. Carpenter

Plaintiff alleges that Carpenter, as the law library supervisor, was responsible for

Wellenstein's actions. As the Court discussed in the December Order, conclusory allegations that a supervisor failed to monitor a subordinate are insufficient to establish personal liability. *See* Dkt. No. 11 at 11. The allegations in the amended complaint do not cure the deficiencies in plaintiff's supervisory claim against Carpenter. While plaintiff annexed a copy of a letter to Carpenter, the letter does not mention Wellenstein and merely advised Carpenter that the law library stapler was inoperable.[23] *See* Am. Compl. at 14; Dkt. No. 20-4 at 4. For the reasons set forth in the December Order, plaintiff's supervisory claims against Carpenter are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

## G. First Amendment Retaliation Claims

The Court discussed the law pertaining to retaliation claims in the December Order. *See* Dkt. No. 11 at 6-8. In the amended complaint, plaintiff reiterates his retaliation claims against Wellenstein and asserts additional retaliation claims against other defendants.

### 1. Claims Against Wellenstein

In the original complaint, plaintiff alleged that Wellenstein retaliated against him when he filed a false misbehavior report and destroyed plaintiff's legal work. *See* Compl. at 11. The Court dismissed the claim holding:

> In this instance, plaintiff annexed copies of several grievances filed against Wellenstein. *See* Dkt. No. 1-2. Even assuming plaintiff sufficiently pleaded that he engaged in protected conduct and that the destruction of legal work and receipt of a misbehavior report constitute adverse actions, the complaint lacks any facts suggesting a causal connection between the conduct and actions. The complaint is devoid of any facts

---

[23] As discussed in Part IV(F)(2), the amended complaint does not contain any facts related to where plaintiff forwarded this letter to Carpenter, how it was forwarded or what response, if any, plaintiff received.

> related to the substance of the misbehavior report, the date
> that it was issued, or any other circumstantial evidence to
> suggest a causal relationship. Plaintiff's conclusory allegations
> fail to state a claim for retaliation against Wellenstein. *See
> Geer v. Brown*, No. 14-CV-650 (DNH/CFH), 2015 WL 847426,
> at *2 (N.D.N.Y. Feb. 26, 2015) (finding that the plaintiff failed to
> proffer any facts showing a causal connection between filing
> grievances and a false misbehavior report).

Dkt. No. 11 at 8.

In the amended complaint, plaintiff provided facts related to eighteen grievances that he filed against Wellenstein from January 6, 2015 through November 15, 2015. *See* Dkt. No. 20-3 at 2, 3, 8, 10-12, 15-21, 34, 42, 43, 44, 46 and 47; Dkt. No. 20-6 at 1-4, 10, 14 and 15. Plaintiff also alleges that as a result of filing those grievances, Wellenstein retaliated against him when he issued misbehavior reports in April 2015, August 2015, November 2015 and December 2015.[24] *See* Dkt. No. 20-6 at 5-6, 8, 12, 24 and 26. Plaintiff further contends that Wellenstein assaulted him, denied him access to the courts and threatened him in retaliation for grievances filed in April 2015 and May 2015. *See* Am. Compl. at 17, 18, 32.

The Court finds that the retaliation claims against Wellenstein survive sua sponte review and require a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed motion to dismiss or for summary judgment.

### 2. Package Room Incident, Cell Search, and Urinalysis

Plaintiff asserts retaliation claims based upon the following incidents: (1) on August 22, 2015, the "package room officer" refused to provide a large manilla envelope for plaintiff to mail his personal and legal mail; (2) retaliatory cell search on November 19, 2015; (3)

---

[24] Plaintiff annexed copies of the grievances and misbehavior reports as exhibits to the amended complaint.

January 14, 2016 "urine analysis"; and (4) keeplock confinement. *See* Am. Compl. at 18, 20-21, 34, 35. Plaintiff contends that these incidents occurred in retaliation for "the numerous grievances filed on the law library." *See id.*

With respect to these incidents, plaintiff does not identify the person or persons responsible for the alleged conduct and has not named any "John Doe" defendants. Plaintiff's failure to identify the parties responsible for the aforementioned incidents requires the Court to dismiss these retaliation claims. *See Renelique v. Doe*, No. 99 CIV.10425, 2003 WL 23023771, at *12 (S.D.N.Y. Dec. 29, 2003) (finding that plaintiff failed to name, as defendants, any individuals who were personally involved with the denial of medical care).

### 3. Retaliation Claims Based Upon Misbehavior Reports Issued by Other Officers

Plaintiff claims that he received five misbehavior reports from individuals other than Wellenstein, in retaliation for the grievances plaintiff filed against Wellenstein. Specifically, plaintiff alleges that Jordan,[25] Miller, Upshaw, and Kieran, among others, issued misbehavior reports in retaliation for plaintiff filing grievances against Wellenstein. *See* Am. Compl. at 13, 16, 20-21, 32 and 33. The aforementioned individuals are not named in the caption of the complaint or otherwise identified as defendants in this action and thus, plaintiff's claims are subject to dismissal. *See Lewis v. Cunningham*, No. 05 Civ. 9243, 2007 WL 2412258, at *3 (S.D.N.Y. Aug. 23, 2007) (dismissing retaliation claims against staff who were not defendants in the action).

### 4. Retaliation Claims Against Carpenter, Digert, and Goppert

---

[25] With respect to the misbehavior report issued by Jordan, the amended complaint lacks any facts suggesting that plaintiff engaged in any protected conduct prior to the date that the misbehavior report was issued.

Plaintiff contends that, in November 2015, Goppert refused to allow him the return to his original cell after the fire and confiscated his prayer rug in retaliation for the grievances filed against Wellenstein. *See* Am. Compl. at 40. Plaintiff also claims that, in January 2016, Carpenter confiscated his prayer rug in retaliation for the "many grievances and lawsuits filed against them and their agents." *See id*. at 51. Plaintiff asserts a retaliation claim against Digert claiming that, on January 14, 2016, Digert intentionally lied to plaintiff resulting in the cancellation of plaintiff's medical appointment in retaliation for the grievances and law suits plaintiff filed against Wellenstein. *See id.* at 20.

Even assuming that plaintiff engaged in protected conduct and that the aforementioned actions were "adverse," these retaliation claims are subject to dismissal. The amended complaint lacks facts suggesting a causal connection between the action and any of plaintiff's grievances. Plaintiff has failed to plead how Goppert, Digert and Carpenter became aware that plaintiff engaged in protected conduct, i.e., filed grievances. *See Faulk v. Fischer*, 545 F. App'x 56, 59 (2d Cir. 2013) (holding that the plaintiff failed to produce evidence suggesting that the defendants were "motivated by, or even aware of," his grievance); *see also Davidson v. Talbot*, No. 01-CV-473 (RFT), 2005 WL 928620, at *16 (N.D.N.Y. March 31, 2005) (concluding that the plaintiff's allegation that he was attacked for filing grievances failed to allege when the grievances were filed and thus, "th[e] Court had no way of assessing the [ ] validity of such claim[]."); *see Guillory v. Haywood*, No. 13-CV-1564 (MAD/TWD), 2015 WL 268933, at *23 (N.D.N.Y. Jan. 21, 2015) (dismissing claim where the plaintiff failed to allege facts identifying the lawsuits or facts from which her awareness could be inferred). The allegations in the amended complaint fail to sufficiently plead a retaliation

claim related to these incidents.

**V.     CONCLUSION**

**WHEREFORE**, it is hereby

**ORDERED** that the amended complaint (Dkt. No. 20), and all exhibits annexed thereto is accepted for filing and is deemed the operative pleading; and it is further

**ORDERED** that the Clerk of the Court is directed to add Goppert, Digert, Carpenter, and Tourtelot to the docket as defendants herein; it is further

**ORDERED** that the following claims are **DISMISSED** pursuant to U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted: (1) First Amendment access to court claims against Ward and Goppert; (2) Eighth Amendment excessive force claims against Wellenstein; (3) Eighth Amendment claims against Digert and Tourtelot; (4) Eighth Amendment conditions of confinement claims; (5) First Amendment freedom of religion claims; (6) claims based upon the destruction or deprivation of property; (7) FOIL claims; (8) retaliation claims related to the package room officer, urine test, cell search, and keeplock confinement; (9) retaliation claims against Digert, Carpenter and Goppert; and (10) supervisory claims against Carpenter and Goppert; it is further

**ORDERED** that Digert, Tourtelot, Goppert and Carpenter are **DISMISSED** as defendants in this action; and it is further

**ORDERED** that the Clerk shall issue summonses for remaining defendants and forward it, along with copies of the amended complaint, to the United States Marshal for service upon the remaining defendants.  The Clerk shall forward a copy of the summonses

32

and amended complaint to the Office of the New York Attorney General, together with a copy of this Decision and Order; and it is further

   **ORDERED** that a response to the complaint be filed by defendants, or their counsel, as provided for in the Federal Rules of Civil Procedure; and it is further

   **ORDERED** that all pleadings, motions and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367. **Any paper sent by a party to the Court or the Clerk must be accompanied by a certificate showing that a true and correct copy of same was served on all opposing parties or their counsel. Any document received by the Clerk or the Court which does not include a proper certificate of service will be stricken from the docket.** Plaintiff must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions. **Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; their failure to do so will result in the dismissal of his action**; and it is further

   **ORDERED** that the Clerk of the Court shall serve a copy of this Decision and Order on plaintiff in accordance with the Local Rules.

April 4, 2016
Albany, New York

Gary L. Sharpe
Gary L. Sharpe
U.S. District Judge

33