**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

---

BRUCE FLYNN,

                    Plaintiff,

       v.                                             No. 15-CV-1028
                                                (TJM/CFH)

JOE WARD and LIEF WELLENSTEIN,

                    Defendants.

---

**APPEARANCES:**                              **OF COUNSEL:**

Bruce Flynn
10-A-1558
Elmira Correctional Facility
P.O. Box 500
Elmira, NY 14902
Plaintiff pro se

Attorney General for the                BRIAN W. MATULA, ESQ.
State of New York                     Assistant Attorney General
Attorney for Defendant
The Capitol
Albany, New York 12224-0341

**CHRISTIAN F. HUMMEL
U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

    Plaintiff pro se Bruce Flynn ("Flynn" or "Plaintiff"), an inmate who was, at all relevant times, in the custody of the New York Department of Corrections and Community Supervision ("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983 against Defendants Acting Superintendent Joe Ward ("Defendant" or "Ward") and C.O. Lief Wellenstein ("Defendant" or "Wellenstein") for violations of his rights under the First Amendment.  Dkt. No. 20 ("Am.

---

[1]     This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

Compl."). Additional defendants were named, but the claims against them have since been dismissed. Dkt. No. 22. Presently before the undersigned is Defendants' motion for summary judgment and dismissal of the Amended Complaint pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). Dkt. No. 64. Flynn did not oppose the motion. For the following reasons, it is recommended that Defendants' motion be granted in part and denied in part.

## I. Failure to Respond

Flynn failed to submit any opposition papers to Defendants' motion for summary judgment. Flynn was notified of the consequences of failing to respond to a summary judgment motion by Defendants and the Court. Dkt. Nos. 64-1 and 65. However, "[t]he fact that there has been no response to a summary judgment motion does not . . . mean that the motion is to be granted automatically." Champion v. Artuz, 76 F.3d 483, 486 (2d Cir. 1996). Even in the absence of a response, Defendants are entitled to judgment only if the material facts demonstrate their entitlement to judgment as a matter of law. Id.; FED. R. CIV. P. 56( c). While "[a] verified complaint is to be treated as an affidavit . . . and [may] be considered in determining whether material issues of fact exist[,]" see Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir. 1995) (citations omitted), Flynn's Amended Complaint is not verified.[2] Thus, the Amended Complaint does not have the "force and effect of an affidavit." See Tafari v. Brown, No. 9:10-CV-1065 (GTS/DRH), 2012 WL 1098447, at *7, n. 8 (N.D.N.Y. Mar. 30, 2012) (collecting cases). Despite this fact, the Court may consider the exhibits attached to the Amended Complaint. See Dawkins v.

---

[2]     The Amended Complaint is not notarized and does not contain any statement from Flynn certifying the veracity of the document under the penalty of perjury.

Williams, 511 F. Supp. 2d 248, 255 (N.D.N.Y. 2007) (considering the exhibits annexed to the pro se plaintiff's amended complaint when deciding the defendant's motion for summary judgment even though that pleading was not verified).    Defendants do not dispute the authenticity of the exhibits and, in fact, utilized the exhibits during Flynn's deposition and cite to the exhibits in support of the motion.  Dkt. No. 64-2 ¶¶ 46-48; Dkt. No. 64-4; Dkt. No. 64-7 at 1-2.[3]    Additionally, a copy of Flynn's deposition transcript is annexed as an exhibit to Defendants' motion.  Dkt. No. 64-4.  Consequently, the facts set forth in Defendants' Rule 7.1 Statement of Material Facts[4] are accepted as true, but only as to those facts that are not disputed by Flynn's sworn testimony or the exhibits annexed to the Amended Complaint.  See N.D.N.Y. L.R. 7.1(a)(3) ("The Court shall deem admitted any properly supported facts set forth in the Statement of Facts that the opposing party does not specifically controvert.") (emphasis omitted).

---

[3]    Citations to page numbers refer to the pagination generated by CM/ECF, not the page numbers generated by the parties.

[4]    Local Rule 7.1(a)(3) states:

Summary Judgment Motions

Any motion for summary judgment shall contain a Statement of Material Facts.  The Statement of Material Facts shall set forth, in numbered paragraphs, each material fact about which the moving party contends there exists no genuine issue. Each fact listed shall set forth a specific citation to the record where the fact is established.

The opposing party shall file a response to the Statement of Material Facts. The non-movant's response shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs. Each denial shall set forth a specific citation to the record where the factual issue arises. The non-movant's response may also set forth any additional material facts that the non-movant contends are in dispute. Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party.

Local Rule 7.1(a)(3).

3

## II. Background

### A. Facts

The facts are related herein in the light most favorable to Flynn as the nonmoving party. See subsection III(A) infra. The facts recited are for the relevant time period as referenced in the Amended Complaint.

At the time of the incidents described in the Amended Complaint, Flynn was confined in the Long Term Protective Custody Unit ("LTPC") at Mid-State Correctional Facility ("Mid-State C.F."). See generally Am. Compl. Wellenstein was a law library officer at Mid-State C.F. Dkt. No. 64-4 at 35-36. Ward was the Superintendent at Mid-State C.F. Id. at 10. From December 2014 through June 2015, Flynn filed numerous requests for legal materials/legal assistance. Dkt. No. 20-2.

From October 2011 until March 5, 2015, inmates in the LTPC had physical access to the law library from 4:30 p.m. until 5:45 p.m. Dkt. No. 20-1 at 2; Dkt. No. 64-4 at 35-36. On March 5, 2015, Captain Goppert issued a memorandum advising the LTPC Population that their law library services would be "modified." Dkt. No. 20-1 at 1. In accordance with Facility Operations

4

Manual 21.04[5] and Directive #4833[6], LTPC inmate requests for legal assistance from the law library must be made in writing and forwarded to the law library officer through the facility mail. Dkt. No. 20-1 at 3.  Inmates were permitted two requests each day.   Dkt. No. 64-4 at 36; Dkt. No. 64-2 ¶ 34.

## 1. Grievances

On January 6, 2015; February 14, 2015; and February 17, 2015, Flynn filed grievances claiming that Wellenstein refused to make copies of his legal work or perform "word" and "key number searches" on the computer.  Dkt. No. 64-5 at 4-7.  The grievances were consolidated (MS-28194-15) and on March 11, 2015, the Superintendent responded that Flynn was being properly assisted.[7]  Id. at 8.  Flynn appealed the decision to the Central Office Review

---

[5]     Mid-State C.F. Facility Operations Manual No. 21.04 provided, in relevant part:

3. Inmates in SHU areas may request, in writing, legal assistance from the Law Library.

a. All requests for assistance must be sent to the Law Library Officer via facility mail and each request should document what kind of service is needed.

c. SHU inmates will only be allowed to have two (2) legal research resources in their possession at a time. Pick-up and delivery of legal materials will be made on a daily basis, Monday through Sunday.

Dkt. No. 20-1 at 17.

[6]     DOCCS Directive #4833 provided, in pertinent part:

Cell Study Services: Inmates prohibited by their confinement status from visiting the Law Library shall be allowed to study Law Library materials in their cells and obtain legal services normally available to general population inmates.  Such inmates may request, in writing, a maximum of two items per day and these will be delivered, if available, within 24 hours of receipt of the request. Inmates may retain said legal materials for a period of not less than 16 hours nor more than 24 hours.

Dkt. No. 20-1 at 5.

[7]     The signature of the Superintendent is illegible.

Committee ("CORC"), and, on January 20, 2016, CORC upheld the Superintendent's determination. Id. at 3.

On March 10, 2015, Flynn filed a grievance claiming that Wellenstein refused to accept his March 8, 2015 request and overcharged him for copies. Dkt. No. 20-3 at 12.

On April 5, 2015, Flynn filed a grievance alleging that Wellenstein (1) denied him access to the courts; (2) fraud; (3) destruction of property; (4) refused to provide legal materials or assistance; and (5) refused to respond to weekend requests (MS-21943-15). Dkt. No. 64-5 at 10-16.  On May 6, 2015, the Superintendent responded that Flynn's concerns were being properly addressed.[8]  Id. at 17.  Flynn appealed the decision to CORC and on October 21, 2015, CORC upheld the Superintendent's determination. Id. at 9.

On April 17, 2015, Flynn filed a grievance claiming that Wellenstein unlawfully ordered him to remain out of his cell while he made rounds.  Dkt. No. 20-3 at 33.

On April 28, 2015, Flynn filed a grievance claiming that Wellenstein was deliberately harassing him and destroying his documents.  Dkt. No. 20-3 at 34.

On April 30, 2015, Flynn filed a grievance charging Wellenstein with repeated verbal harassment.  Dkt. No. 20-3 at 42.  Flynn claimed that Wellenstein came to his cell, accused Flynn of smoking, entered the cell, and pushed Flynn aside.  Id.  Flynn alleged that Wellenstein made "a couple of smart remarks" and was "angry" over the numerous grievances Flynn filed. Id.

On May 6, 2015; May 8, 2015; and May 11, 2015, Flynn filed grievances accusing Wellenstein of destroying copies, harassment, and threatening behavior.  Dkt. No. 64-5 at 19-

---

[8]        See Footnote 8, supra.

6

21.  The grievances were consolidated (MS-21970-15), and, on July 14, 2015, after an investigation, the Superintendent issued a decision denying the grievances.[9]  Id. at 22-23. Flynn appealed the decision to CORC and on September 21, 2015, the Superintendent's decision was affirmed.  Id. at 18.

On May 14, 2015, Flynn filed a grievance claiming that Wellenstein refused to provide books. Dkt. No. 20-3 at 46.

On July 21, 2015, Flynn filed a grievance claiming that Wellenstein refused to provide envelopes and deliberately amended his documents.  Dkt. No. 20-6 at 2.

On August 1, 2015, August 7, 2015, and August 10, 2015, Flynn filed grievances against Wellenstein claiming that he refused to make copies of documents "in retaliation for the 2 most recent grievances against him."  Dkt. No. 64-5 at 26-28.  The grievances were consolidated (MS-22079-15) and on August 27, 2015, after an investigation, the Superintendent denied the grievances.[10]  Id. at 29.  Flynn appealed the decision to CORC and on October 21, 2015, CORC affirmed the Superintendent's decision.  Id. at 24.

On August 20, 2015, Flynn filed a grievance (MS-22105-15) claiming that Wellenstein threatened him and told him, "if I did not stop with my grievances that he, C.O.'s Jordan and Miller were going to set me up again like they have done numerous times in the past."  Dkt. No. 20-6 at 10.

On October 23, 2015, Flynn filed a grievance claiming that Wellenstein refused to provide copies and purposefully delayed his access to the courts (MS-22183-15).  Dkt. No. 64-5 at 31.

---

[9]      See Footnote 7, supra.

[10]     See Footnote 7, supra.

On November 10, 2015, after an investigation, the Superintendent determined that Flynn was being provided with Law Library services pursuant to Directive #4483.[11]  Id. at 33.  Flynn appealed to CORC, and on February 17, 2016, CORC upheld the determination.  Id. at 30.

On November 6, 2015, Flynn filed a grievance (MS-22200-15) claiming that Wellenstein's behavior prohibited him from conducting meaningful research.  Dkt. No. 64-5 at 37.  On December 15, 2015, after an investigation, the Superintendent denied the grievance.[12]  Id. at 38.  Flynn appealed the decision to CORC, and on March 23, 2016, CORC affirmed the determination.  Id. at 36.

On January 14, 2016, Flynn filed a grievance claiming that the photocopier was not functioning properly because Wellenstein manipulated the memory function.  Dkt. No. 20-6 at 61.

## 2. Misbehavior Reports

On April 30, 2015, Wellenstein issued a misbehavior report charging Flynn with smoking.[13]  Dkt. No. 20-6 at 70.  After a Tier II disciplinary hearing, Flynn was sentenced to eighteen days in keeplock confinement.  Id.  Flynn served his sentence from April 30, 2015 until May 18, 2015.  Id.

On August 1, 2015, Officer Koscielniak issued Flynn a misbehavior report charging him with violating facility rules related to smoking.  Dkt. No. 20-6 at 6.  After a Tier II disciplinary hearing, the hearing officer sentenced Flynn to a thirty day loss of recreation, commissary, and

---

[11]    See Footnote 7, supra.

[12]    See Footnote 7, supra.

[13]    The misbehavior report is not part of the record.

phone/package privileges. Id. at 70.   On August 1, 2015, Wellenstein issued a second misbehavior report charging Flynn with disobeying a direct order. Dkt. No. 20-6 at 5.  After a Tier II disciplinary hearing, the hearing officer sentenced Flynn to a thirty day loss of recreation, commissary, and phone/package privileges for thirty days, but the sentence was suspended until November 16, 2015. Id. at 70.

On August 17, 2015, Officer Alsante issued Flynn a misbehavior report charging him with placing a three-way call in violation of facility rules.  Dkt. No. 20-6 at 8.  Alsante noted that, on August 17, 2015, "[a]t approx. 9:05 p.m., at the request of C.O. J. Jordan, I began monitoring 10-2 SHU phone[.]"  Id.  As a result of the report, Flynn was placed in keeplock for eighteen days from August 17, 2015 until September 4, 2015. Id. at 8, 70.   Flynn appealed the decision to Ward claiming that Jordan asked Alsante to monitor his telephone call "as part of a campaign of harassment that CO Wellenstein has launched against those inmates in 10-2 who are trying to access the law library and [c]ourts." Id. at 9.  Flynn further noted:

> CO W has written 4 misbehavior reports against me & encourages other CO's to do the same, as well as monitor our alleged activities, and in this incident no 3- way call was made & this is retaliation for my litigation.

Dkt. No. 20-6 at 9.

On August 24, 2015, Wellenstein issued a misbehavior report charging Flynn with threats and harassment.  Dkt. No. 20-6 at 12.  Wellenstein reported that Flynn told him, "[o]ne day when I get out, I am going to see you selling flowers on the corner and then I will take care of you the way I want to."  Id.  After a Tier II disciplinary hearing, Flynn was sentenced to thirty days in keeplock confinement.  Id. at 70.  The sentence was suspended until December 8, 2015.  Id.

On November 12, 2015, Officer U. Upshaw issued Flynn a misbehavior report charging him with smoking, arson, false statements, and possessing flammable material.  Dkt. No. 20-6 at 24.  After a disciplinary hearing, the charges were dismissed.  Id. at 25.

On November 18, 2015, Wellenstein issued a misbehavior report charging Flynn with harassment.  Dkt. No. 20-6 at 16.  The misbehavior report was dismissed by the hearing officer.  Am. Compl. ¶ 125.

On December 11, 2015, Wellenstein issued a misbehavior report charging Flynn disobeying a direct order and harassment.  Dkt. No. 20-6 at 26.  The ticket was dismissed by the hearing officer.  Am. Compl. at ¶ 130.

### 3. Legal Work

In 2013, Flynn filed a Habeas Corpus petition in this Court.  See Flynn v. J. Colvin, No. 9:13-CV-1247 (JKS) (N.D.N.Y. 2013).  On October 19, 2015, Flynn filed an action in the Court of Claims against Wellenstein charging him with deliberately destroying legal documents.  Dkt. No. 20-6 at 27-28.  In 2014 and 2015, Flynn was researching and gathering exhibits in support of a writ of error coram nobis to vacate his conviction.  Dkt. No. 64-4 at 17.  In 2014 and 2015, Flynn was also working on a petition for the Department of Veterans' Affairs to increase his disability benefits, Article 78 petitions, a foreclosure action, and commenced litigation in the Court of Claims.  Dkt. No. 64-4 at 18, 21, 25, 29.  On August 24, 2015, Flynn commenced the within action.  Dkt. No. 1.

During his deposition, Flynn testified that did not know the procedural posture of any of his actions or petitions, could not recall whether deadlines were in place in any litigation, and could not remember the details of each petition and action.  Dkt. No. 64-4 at 17-31.

Flynn testified that his legal work was lost and therefore, without being able to refer to his legal records, he could not state whether he suffered any negative consequences in any legal matter.  Id. at 31-32, 44, 107.

In June 2016, Flynn was transferred out of Mid-State C.F.  Dkt. No. 25.

## B.  Procedural History

On August 24, 2015, Flynn filed the Complaint in this action.  Dkt. No. 1.  In a Decision and Order filed December 4, 2015 ("December Order"), the Court reviewed the Complaint in accordance with 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A, and determined that the Complaint failed to state a claim upon which relief could be granted and, therefore, was subject to dismissal.  Dkt. No. 11.  In light of his pro se status, Flynn was afforded an opportunity to submit an amended complaint. Dkt. No. 11 at 18.  On February 25, 2016, Flynn filed an Amended Complaint.  Dkt. No. 20.  Upon review of the Amended Complaint, the Court directed Wellenstein and Ward to respond to the First Amendment claims related to access to the courts and retaliation.  Dkt. No. 22 at 14, 26, 29.

## III.  Discussion[14]

In the Amended Complaint, Flynn alleges that his First Amendment right to access the courts was violated and further, that Wellenstein retaliated against him for filing grievances.  See generally Am. Compl.  Defendants move for summary judgment arguing that (1) Flynn failed to allege any "actual injury" to sustain a First Amendment claim; (2) Flynn cannot

---

[14]     All unpublished opinions cited to by the undersigned in this Report-Recommendation are, unless otherwise noted, attached to this Report-Recommendation.

establish a retaliation claim against Wellenstein; (3) Flynn's supervisory claims against Ward must be dismissed; and (4) Flynn failed to exhaust his administrative remedies with respect to retaliatory conduct. See generally Dkt. No. 64.

### A.  Legal Standard

A motion for summary judgment may be granted if there is no genuine issue as to any material fact, it was supported by affidavits or other suitable evidence, and the moving party is entitled to judgment as a matter of law. See FED R. CIV. P. 56(a).  The moving party has the burden to show the absence of disputed material facts by providing the court with portions of pleadings, depositions, and affidavits which support the motion. See FED R. CIV. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Facts are material if they may affect the outcome of the case as determined by substantive law.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  All ambiguities are resolved and all reasonable inferences drawn in favor of the non-moving party.  See Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

The party opposing the motion must set forth facts showing that there is a genuine issue for trial, and must do more than show that there is some doubt or speculation as to the true nature of the facts.  See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  For a court to grant a motion for summary judgment, it must be apparent that no rational finder of fact could find in favor of the non-moving party.  See Gallo v. Prudential Residential Servs., Ltd. P'ship., 22 F.3d 1219, 1223-24 (2d Cir. 1994); Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1998).

Where, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude.  See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477

(2d Cir. 2006).  As the Second Circuit has stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to "special solicitude," . . . that a pro se litigant's submissions must be construed "liberally," . . . and that such submissions must be read to raise the strongest arguments that they "suggest,". . . At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, . . . or arguments that the submissions themselves do not "suggest," . . . that we should not "excuse frivolous or vexatious filings by pro se litigants," . . . and that pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law,". . .

Id. (citations and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d

185, 191–92 (2d Cir. 2008).

## B. First Amendment

### 1. Access to Courts

Flynn claims that Wellenstein deliberately "mixed up" and destroyed legal exhibits, refused to accept legal requests, and failed to provide legal materials, assistance, and copies.  See generally, Am. Compl.  As a result, Flynn claims that he was prevented from filing a writ of coram nobis, a petition for habeas relief, a petition with the Department of Veterans' Affairs, an Article 78 petition, and an appeal with the New York State Retirement System and missed deadlines in pending litigation.  See id.  Defendants argue, even assuming that Flynn had demonstrated a material issue of fact as to whether Defendants acted deliberately and maliciously in failing to provide him with legal assistance and materials, the record does not support Flynn's conclusory claim that he suffered an actual injury caused by the Defendants. Dkt. No. 64-6 at 4.

Undoubtedly, prisoners have a constitutional right to meaningful access to the courts. See Bounds v. Smith, 430 U.S. 817, 824 (1977); Lewis v. Casey, 518 U.S. 343, 350 (1996) ("The right that Bounds acknowledged was the (already well-established) right of access to the courts."). This right is implicated when prison officials "actively interfer[e] with inmates' attempts to prepare legal documents[ ] or file them[.]" Lewis, 518 U.S. at 350 (internal citations omitted). To establish a denial of access to the courts claim, a plaintiff must satisfy two prongs. First, a plaintiff must show that the defendant acted deliberately and maliciously. See Davis v. Goord, 320 F.3d 346, 351 (2d Cir. 2003). Second, the plaintiff must demonstrate that he suffered an actual injury, "i.e., [the defendant] took or was responsible for actions that hindered a plaintiff's efforts to pursue a legal claim." Monsky v. Moraghan, 127 F.3d 243, 247 (2d Cir. 1997) (internal citations, quotation marks, and alterations omitted) (quoting Lewis, 518 U.S. at 329); Davis, 320 F.3d at 351 (internal quotation marks omitted). "[A] delay in being able to work on one's legal action or communicate with the courts does not rise to the level of a constitutional violation." Benjamin v. Kerik, 102 F. Supp. 2d 157, 164 (S.D.N.Y. 2000) (citation omitted), aff'd sub nom. Benjamin v. Fraser, 264 F.3d 175 (2d Cir. 2001).

Here, while Flynn made several claims in his Amended Complaint related to pending legal matters, Flynn testified at his deposition that he could not recall what litigation he was working on in 2015, the procedural posture of any pending litigation, or whether he was subject to any Court imposed deadlines. Dkt. No. 64-4 at 12-31. Flynn testified that he filed actions in the Court of Claims against Wellenstein related to the destruction of his legal work, and that the actions were dismissed, but he could not attribute that dismissal to Wellenstein's actions or inactions. Id. at 25-26, 29, 30. Flynn explained that he could not provide any specific information related to Court deadlines or legal matters because he was compelled to send his

14

legal work home and it was lost.  Dkt. No. 64-4 at 18-19, 25, 31, 45.  Flynn testified:

> . . . Most of my legal work was shipped - - sent home.
> They forced me to send most of my legal work home,
> so - - and I haven't been able to get my legal work sent
> to me.  Then they lost a box of legal work, so.

Dkt. No. 64-4 at 18.

The record however, lacks any facts related to who directed Flynn to send his legal work home, when or what portion of his work was misplaced or lost, and who was responsible for his missing legal work.

Even if the undersigned accepts Flynn's explanation, the docket reports for cases pending in this Court , as well as Flynn's litigation history, belie his First Amendment claims.  In October 2013, Flynn filed a Petition for Habeas Corpus relief.  See Flynn v. Colvin, No. 9:13-CV-1247 (JKS), Dkt. No. 1 (N.D.N.Y. Oct. 7, 2013).  From February 2014 until June 2016, Flynn filed several submissions in that case including various motions, an application for counsel, a reply to his petition, and objections to Court Orders.  Id.; Dkt. Nos. 20, 22, 24, 26, 27, 29, 31, 33, 34, 35, 36, 38.  In December 2016, the Petition was denied and Judgment was entered.  Id.; Dkt. Nos. 47, 48.  Nothing in the record suggests that the Petition was denied for failure to comply with deadlines, prosecute, or purse the action.

In August 2015, Flynn commenced the within action by filing an eighteen page complaint with over two hundred pages of exhibits, together with a motion to proceed IFP, an inmate authorization form, a motion to appoint counsel, and a motion for preliminary injunctive relief. Dkt. Nos. 1, 2, 3, 4, 5.  From August 2015 until June 2016, Flynn filed letters, motions, and a fifty-four page Amended Complaint.  Dkt. No. 6, 8, 10, 12, 16, 18, 20, 23.  Flynn has clearly been able to proceed in his litigation of this case, despite his claims otherwise.

15

In December 2017 and March 2018, the Appellate Division issued Orders dismissing two such petitions. See Flynn v. Annucci, 156 A.D.3d 1105 (3d Dep't 2017); Flynn v. Annucci, 159 A.D.3d 1181, 1182 (3d Dep't 2018). In the 2018 Order, the Court affirmed the disciplinary determination after considering the documentary evidence, hearing testimony, and misbehavior report. Flynn, 159 A.D.3d at 1182. The record lacks facts establishing that these cases were dismissed due to Flynn's inability to prosecute or purse the matters or Defendants' behavior. See Davis, 320 F.3d at 352 (holding that a plaintiff must show that there is "a causal connection between the protected speech and the adverse action.") (citation omitted).

To summarize, Flynn has failed to show that Defendants' actions hindered his efforts to pursue a legal claim. Flynn was able to file several submissions in this Court, demonstrating that Defendants' alleged conduct did not prevent him from litigating actions. Flynn has failed to provide evidence of any type of actual injury which occurred as a result of Defendants' actions. Flynn has failed to identify which legal claims were frustrated, if they were meritorious, and how his access to legal materials, supplies, or the law library would have supported the viability of such claims. In the absence of any evidence that Flynn suffered any actual injury precluding him from pursuing any judicial action, it is recommended that Defendants' motion for summary judgment on this ground should be granted.

### 2. Retaliation

To state an actionable claim for retaliation under the First Amendment, a prisoner must establish by a preponderance of the evidence that: (1) the speech or conduct at issue was protected; (2) the defendant took adverse action against the plaintiff; and (3) there was a causal connection between the protected speech and the adverse action. See Gill v.

16

Pidlypchak, 389 F.3d 379, 380 (2d Cir. 2004) (internal quotation marks and citation omitted); Tafari v. McCarthy, 714 F.Supp.2d 317, 347 (N.D.N.Y. 2010).  Courts must view retaliation claims with care and skepticism to avoid judicial intrusion into matters of prison administration. See Jackson v. Onondaga Cnty., 549 F. Supp. 2d 204, 214-15 (N.D.N.Y. 2008).  Therefore, conclusory allegations alone are insufficient.  See id. at 214 (citing Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir. 1983) (explaining that "claim[s] supported by specific and detailed factual allegations . . . ought usually be pursued with full discovery.")).  If the plaintiff establishes these elements, the burden shifts to the defendants to show by a preponderance of the evidence that they would have taken the same action against the plaintiff absent his engaging in the protected conduct.  See Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996).

To satisfy the first element of a retaliation claim, a plaintiff must show that he engaged in a protected activity.  See Espinal v. Goord, 558 F.3d 119, 128 (2d Cir. 2009).  In the prison context, "adverse action" is objectively defined as conduct "that would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights."  Davis v. Goord, 320 F.3d 346, 353 (2d Cir. 2003).  "[A]dverse action taken for both proper and improper reasons may be upheld if the action would have been taken based on the proper reasons alone." Jackson, 549 F. Supp. 2d at 215.

The plaintiff bears the burden of establishing that "the protected conduct was a substantial or motivating factor in the prison officials' decision to discipline the plaintiff." Gayle, 313 F.3d at 682.  A plaintiff "may do so with circumstantial evidence if it is 'sufficiently compelling[.]'"  Kotler v. Donelli, 382 F. App'x 56, 57-58 (2d Cir. 2010) (summary order) (quoting Bennett v. Goord, 343 F.3d 133, 137 (2d Cir. 2003)).  "Types of circumstantial evidence that can show a causal connection between the protected conduct and the alleged

17

retaliation include temporal proximity, prior good disciplinary record, finding of not guilty at the disciplinary hearing, and statements by defendants as to their motives." Barclay v. New York, 477 F. Supp. 2d 546, 588 (N.D.N.Y. 2007) (citations omitted).  Temporal proximity between the protected activity and the adverse action "must be very close." Meyer v. Shulkin, __ F. App'x __, 2018 WL 480478, at *2 (2d Cir. Jan. 19, 2018) (citation omitted).

> There is no bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship, so courts judge the permissible inferences that can be drawn from temporal proximity in the context of particular cases.  However, courts have found that six and eight month gaps between the protected conduct and adverse action were sufficient, while in other circumstances three months was considered too long.

Burton v. Lynch, 664 F.Supp.2d 349, 367 (S.D.N.Y. 2009) (internal quotation marks and citations omitted).

Flynn claims that Wellenstein assaulted him, threatened him, denied him access to the court, and filed misbehavior reports in retaliation for Flynn's grievances against Wellenstein. See generally Am. Compl.  It is well-settled that the filing of a grievance constitutes protected speech under the First Amendment.  See Graham, 89 F.3d at 80; Franco v. Kelly, 854 F.2d 584, 589 (2d Cir. 1988) ("Moreover, intentional obstruction of a prisoner's right to seek redress of grievances is precisely the sort of oppression that section 1983 is intended to remedy.") (alteration and internal quotation marks omitted); see also Roseboro, 791 F. Supp. 2d at 367 (finding that the filing of a grievance is a protected activity); Mateo v. Fischer, 682 F. Supp. 2d 423, 433 (S.D.N.Y. 2010) (same).   Thus, for each allegation, Flynn has satisfied the first prong of First Amendment retaliation analysis. Thus, the Court turns to whether Flynn has established that he suffered an adverse action and a causal connection between the protected conduct and

the adverse action.

### a. Assault

Flynn alleges that Wellenstein assaulted him on April 30, 2015 in retaliation for filing grievances.  See Am. Compl. ¶ 54.  With respect to the second prong of the analysis, Defendants claim that the alleged action, i.e., pushing, was de minimis and thus, not an adverse action.  The undersigned agrees.  Although an alleged assault need not rise to the level of an Eighth Amendment excessive force violation in order to be considered an adverse action for purposes of First Amendment retaliation analysis, Flynn's allegations that Wellenstein "push[ed] him around," see Am. Compl. ¶ 54, are de minimis.  See Rivera v. Goord, 119 F. Supp. 2d 327, 340 (S.D.N.Y. 2000) ("[E]ven though [the plaintiff] has alleged that the actions of [the defendants] were motivated by [the plaintiff's] filing of grievances, the alleged acts of retaliation, even if assumed to be true, are de minimis; [the plaintiff] states only that [the defendants] 'shoved' him while taking him to the 'box' (i.e., Green Haven's Special Housing Unit, or "SHU").  Such actions, even if proven at trial, would not chill a person of ordinary firmness from continuing to engage in First Amendment activity."); Sloane v. Mazzuca, No. 04 CV 8266(KMK), 2006 WL 3096031, at *13-14 (S.D.N.Y. Oct. 31, 2006) (concluding that the defendant's conduct of throwing a food tray at plaintiff did not amount to adverse action); cf. Williams v. Hesse, No. 9:16-CV-01343 (GTS/TWD), 2018 WL 1363759, at *7-8 (N.D.N.Y. Feb. 2, 2018) (concluding that the defendants' threats coupled with spitting chewing tobacco in the plaintiff's face that resulted in "severe burning, pain, and a temporary loss of vision in his right eye for nearly six hours, and a severe headache for days" constituted adverse action) Moreover, there is no indication that plaintiff sought medical treatment or experienced severe

19

pain or suffering as a consequence of the alleged assault.  See Williams, 2018 WL 1363759, at *7-8.  Therefore, because the undersigned finds that Wellenstein's alleged assault does not amount to adverse action, it is recommended that Defendants' motion on this ground be granted.

### b.  Access to Courts

Flynn alleges that Wellenstein denied him access to the law library and to the courts in retaliation for filing grievances.  Dkt. No. 20 ¶¶ 57, 59, 118, 119, 120, 122.  Although a defendant's underlying action may not amount to a violation of a constitutionally protected right, this does not preclude such action from consideration as an adverse action.  See Shariff v. Poole, 689 F. Supp. 2d 470, 478-79 (W.D.N.Y. 2010).  "'An act in retaliation for the exercise of a constitutional right is actionable under § 1983 even if the act when taken for different reasons would have been proper.'" Id. (quoting Franco, 854 F.2d at 588); see Nei v. Dooley, 372 F.3d 1003, 1007 (8th Cir. 2004) (rejecting the defendants' argument that "[a]s for the inmates' claim that they were retaliated against for filing their lawsuit by being denied access to the prison law library, the officials contend the district court should have construed the claim as one of denied access to the courts, requiring proof of actual injury, rather than one of retaliation) (citation omitted).  Thus, even though the undersigned has recommended dismissal of plaintiff's access to the courts claim, Wellenstein's underlying conduct may still be assessed as adverse action.

It is well-settled that the denying an inmate access to the law library or destroying legal material constitutes adverse action.  See Guillory v. Haywood, No. 9:13-CV-01564 (MAD), 2015 WL 268933, at *17 (N.D.N.Y. Jan. 21, 2015) ("Furthermore, refusing to allow Plaintiff to

go to the law library knowing that it would prevent an inmate from filing papers in a pending lawsuit in a timely manner would arguably deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights.") (internal quotation marks and citation omitted); see also Jean-Laurent v. Lane, No. 9:11-CV-186 (NAM/TWD), 2013 WL 600213, at *10 (N.D.N.Y. Jan. 24, 2013), report and recommendation adopted, 2013 WL 599893 (N.D.N.Y. Feb. 15, 2013) ("Destruction of Plaintiff's legal material and documents for his Second Circuit appeal constitutes an adverse action for purposes of the retaliation analysis."). Thus, Flynn has established the second prong of the retaliation analysis.

With respect to the third prong, Flynn must establish a causal connection "sufficient to support the inference 'that the speech played a substantial part' in the [ ] adverse [ ] action." Diesel v. Town of Lewisboro, 232 F.3d 92, 107 (2d Cir. 2000) (quoting Ezekwo v. NYC Health & Hosps. Corp., 940 F.2d 775, 780-81 (2d Cir.1991)). As to temporal proximity, the record indicates that on March 10, 2015; April 5, 2015; April 30, 2015; May 6, 2015; May 8, 2015; May 11, 2015; May 14, 2015; July 21, 2015; August 7, 2015; October 23, 2015; and November 6, 2015, Flynn filed grievances against Wellenstein. See Dkt. N. 64-7. Although there is no "bright line" establishing the time frame appropriate for establishing temporal proximity, the short gap between the protected conduct and adverse action appears sufficiently close to support an indication of a causal connection. See Espinal, 558 F.3d at 129 (holding that passage of six months between protected conduct and adverse action sufficiently supported an inference of a causal connection); see, e.g., Morales v. Mackalm, 278 F.3d 126, 131 (2d Cir. 2002) (concluding that the short time frame between grievance and retaliatory action, along with allegation of the defendant's involvement, sufficed to support an inference of a retaliatory motive), abrogated on other grounds, Porter v. Nussle, 534 U.S. 516 (2002)).

21

However, "temporal proximity alone cannot create a genuine issue of material as to whether the motivation behind [the defendant's] actions was retaliation." Parks v. Blanchette, 144 F.Supp.3d 282, 336-37 (D. Conn. 2015). Additional circumstantial evidence supports the conclusion that Wellenstein's conduct may have been motivated by Flynn's complaints. On May 8, 2015, Flynn contends that Wellenstein stated, "don't you dare file any more grievances or I will slap you silly and write misbehavior reports to stop you from requesting anything." Am. Compl. ¶ 56. On May 11, 2015, Wellenstein stated "don't [you] dare request anything or I will write you up. I will set you up for grieving me all the time." Id. ¶ 58. Assessing these statements in the light most favorable to Flynn as the non-moving party, the statements are sufficient to support "an inference of a causal connection between" plaintiff's grievances and Wellenstein's alleged denial of legal materials and/or the law library. Baskerville v. Blot, 224 F. Supp. 2d 723, 732 (S.D.N.Y. 2002). Moreover, Wellenstein has not provided an affidavit or other evidence to refute Flynn's testimony. Therefore, there is a genuine triable issue of fact for a jury to consider. See Ramos v. O'Connell, 28 F. Supp. 2d 796, 803 (W.D.N.Y. 1998) (denying summary judgment where the defendants failed to submit affidavits or documents to contradict the plaintiff's account). Therefore, affording plaintiff special solicitude, it is recommended that Defendants' motion on this ground be denied.

### c. Threats

Verbal harassment and threats are generally not considered conduct "that would deter a similarly situation individual of ordinary firmness of exercising constitutional rights." Cabassa v. Smith, No. 9:08-CV-0480 (LEK/DEP), 2009 WL 1212495, at *7 (N.D.N.Y. Apr.30, 2009) (citing Gill, 389 F.3d at 380) (additional citation omitted). Verbal threats however, may

22

constitute adverse action for purpose of a First Amendment retaliation if the threats are sufficiently specific.  Barrington v. New York, 806 F. Supp. 2d 730, 746 (S.D.N.Y. 2011); see also Ford v. Palmer, 539 F. App'x 5, 6 (2d Cir. 2013) (summary order) (finding that a verbal threat constituted adverse action where corrections officer threatened to poison the plaintiff in retaliation for filing his grievances).

Here, Flynn testified that Wellenstein threatened him and told him not to go to the law library.  Dkt. No. 64-4 at 93-94.  Upon further questioning, Flynn testified:

> Q.  Okay.  When did he make threats about not going to the law library?
> A.  I don't recall.
> Q.  What about threats in writing you up, when did he say that?
> A.  I don't recall.
> Q.  Do you recall the sum and substance of any of the conversations about not going to the law library or about writing you up?
> A.  I don't recall right now.

Dkt. No. 64-4 at 94.

Flynn did not document or report the threats.  Dkt. No. 64-4 at 96.  Based upon the record, the Court concludes that Wellenstein's alleged threats are not sufficiently specific to constitute adverse action.  See Bartley v. Collins, No. 95 Civ. 10161, 2006 WL 1289256, at *2-4 (S.D.N.Y. May 10, 2006) (finding no adverse action where a corrections officer tells a plaintiff that he is going to "get [him]" for filing a lawsuit); Alicea v. Howell, 387 F. Supp. 2d 227, 237 (W.D.N.Y. 2005) (finding no adverse action where a prison official told an inmate that he would "have to pay the consequences" for filing a grievance against her).

Accordingly, it is recommended that Defendants' motion for summary judgment and

dismissal of retaliation claims on this ground be granted.[15]

#### d. Misbehavior Reports

Flynn alleges that Wellenstein filed misbehavior reports, and directed other officers to file misbehavior reports, in retaliation for grievances.  Am. Compl. ¶¶ 55, 70, 71, 73, 79.  A defendant's retaliatory filing of a falsified misbehavior report that results in disciplinary segregated confinement constitutes adverse action.  See Gill, 389 F.3d at 384 (finding that a false misbehavior report that resulted in the plaintiff's placement in keeplock constituted adverse action).  Courts in this Circuit have held that a temporary loss of privileges does not constitute adverse action.  See Smith v. City of New York, No. 14 CIV. 5927, 2017 WL 2172318, at *6 (S.D.N.Y. May 16, 2017); see also Monko v. Cusack, No. 9:11-CV-1218 (GTS/TWD), 2013 WL 5441724, at *11 (N.D.N.Y. Sept. 27, 2013) (". . . the temporary loss of privileges such as the post-adjustment privileges lost by Plaintiff for thirty-six days are de minimis and do not constitute adverse action for purposes of a retaliation claim.") (citation omitted); Bartley, 2006 WL 1289256 at *7 (holding that a misbehavior report which resulted in the temporary loss of commissary privileges does not constitute adverse action because the penalty was de minimis).

As a result of the misbehavior reports issued by Koscielniak and Wellenstein on August 1, 2015, Flynn suffered a temporary loss of privileges.  Dkt. No. 20-6 at 70.  Flynn was not sentenced to any disciplinary confinement or penalized as a result of the November 12, 2015,

---

[15]   In light of my recommendation that Flynn's retaliation claim based upon threats be dismissed in its entirety based on the merits, I find it unnecessary to address the alternative failure to exhaust arguments related to this claim.

November 18, 2015 and December 11, 2015 misbehavior reports. Dkt. No. 20-6 at 25; Am. Compl. ¶¶ 125, 130. Therefore, because Flynn has failed to show that he suffered an adverse action as a result of the aforementioned tickets, the undersigned need not determine whether there is a causal connection between Flynn's protected conduct and these misbehavior reports. Accordingly, it is recommended that Defendants' motion for summary judgment and dismissal of retaliation claims based upon the August 1, 2015; November 12, 2015; November 18, 2015; and December 11, 2015 reports be granted.[16]

The Court reaches a different conclusion however, with respect to the remaining misbehavior reports. As a result of the April 30, 2015 and August 18, 2015 tickets, Flynn was sentenced to eighteen days in keeplock. Dkt. No 20-6 at 70. As a result of the August 24, 2015 misbehavior report, Flynn received a thirty day keeplock sentence.[17] Id. Accordingly, Flynn has established the second prong of the retaliation analysis with respect to these misbehavior reports. Having found that Flynn satisfied the first and second prong of the retaliation analysis with respect to these tickets, the Court turns to whether the record establishes a causal connection between the protected conduct and the adverse action.

### i. April 30, 2015

On April 30, 2015, Wellenstein issued Flynn a misbehavior report for smoking. Am. Compl.

---

[16]     See Footnote 17, supra.

[17]     Defendants argue that a suspended sentence does not constitute an adverse action. Dkt. No. 64-6 at 18. Defendants claim, without evidentiary support, that Flynn did not serve keeplock or lose any privileges as a result of this misbehavior report. Id. The record before the Court establishes that the thirty day sentence was suspended until December 8, 2105. Dkt. No. 20-6 at 70. There is however, a genuine issue of fact regarding whether Flynn served the keeplock sentence. Construing the facts in a light most favorable to the pro se, non-moving party, the Court finds that Defendants have failed to meet their burden of proof with regard to this issue.

¶ 55; Dkt. No. 64-6 at 14.  Flynn contends that this misbehavior was in retaliation for his April 16, 2015 and April 28, 2015 grievances. Am. Compl. ¶ 55.  First, the undersigned notes that the April 16, 2015 grieves conduct by the "law library relief officer" and makes no mention of Wellenstein.  See Dkt. No. 20-3 at 31.  Absent evidence by plaintiff that Wellenstein either was the library relief officer or knew of the contents of said grievance, the April 16, 2015 grievance cannot be the basis for his retaliation claim.  See Tafari, 714 F. Supp. 2d at 374 (concluding that the plaintiff failed to establish a causal connection where the defendant was not named in the original grievance).  Second, as to the April 28, 2015 grievance, although the temporal proximity of two days sufficiently supports an inference of causal connection, temporal proximity "without more, is insufficient to survive summary judgment."  Roseboro v. Gillespie, 791 F. Supp. 2d 353, 370 (S.D.N.Y. 2011) (citing inter alia Ayers v. Stewart, 101 F.3d 687, 1996 WL 346049 (Table), at *1 (2d Cir. 1996) ("[The plaintiff's] reliance on circumstantial evidence of retaliation-namely, the proximity of the disciplinary action to his complaint where no misbehavior reports were previously filed against him-does not suffice to defeat summary judgment.").  As to statements regarding Wellenstein's motivations, the record indicates that on May 8, 2015, Wellenstein stated, "don't you dare file any more grievances or I will slap you silly and write misbehavior reports to stop you from requesting anything." Am. Compl. ¶ 56.  Assessing this statement in the light most favorable to Flynn as the non-moving party, the undersigned finds it sufficient to support "an inference of a causal connection between" plaintiff's grievances and Wellenstein's alleged filing of misbehavior reports.  Baskerville, 224 F. Supp. 2d at 732.

Wellenstein argues that even assuming the evidence creates a material question of fact as to whether he had retaliatory intent, he would have issued the misbehavior report even in

the absence of the protected conduct.  "[T]he conclusion that the state action would have been taken in the absence of improper motives is readily drawn in the context of prison administration where we have been cautioned to recognize that prison officials have broad administrative and discretionary authority over the institutions they manage."  Hynes v. Squillace, 143 F.3d 653, 657 (2d Cir. 1998).  "Defendants [may meet] their burden of showing that they would have disciplined the plaintiff even in the absence of the protected conduct if 'it was undisputed that [the inmate plaintiff] had in fact committed the prohibited conduct' for which he had been cited in a misbehavior report."  Id. (citing Lowrance v. Achtyl, 20 F.3d 529, 535 (2d Cir.1994)).

In September 2013 and March 2015, Flynn was charged with smoking at Mid-State C.F. Dkt. No. 20-6 at 70.  Flynn was found guilty of those charges.  Id.  During his deposition, Flynn admitted that he smoked in his cell in the past and conceded that he "had several disciplinary issues with smoking[.]"  Dkt. No. 64-4 at 95-96.  However, Flynn maintains that on April 30, 2015, he was not smoking in his cell.  Id.  As discussed supra, Wellenstein has not provided any sworn testimony in support of the motion, and, thus, has not met his burden of establishing that he would have filed the misbehavior report even in the absence of the protected conduct. Accordingly, there is an genuine dispute as to whether Flynn committed the charged conduct. See Gayle, 313 F.3d at 684 (denying summary judgment where it is disputed whether the plaintiff committed the prohibited conduct).  Therefore, the undersigned recommends that Defendants' motion for summary judgment, on this basis, be denied.[18]

---

[18]    See Footnote 15, supra.

### ii.  August 17, 2015

The August 17, 2015 misbehavior report was written by Officer Alsante.  Dkt. No. 20-6 at

8.  To establish a retaliation claim, a plaintiff must show "a genuine issue of material fact that

the protected conduct was a substantial or motivating factor in his discipline."  Graham, 89 F.3d

at 81.  "[I]t is difficult to establish one defendant's retaliation for complaints against another

defendant."  Hare v. Hayden, No. 09 Civ. 3135, 2011 WL 1453789, at *4 (S.D.N.Y. Apr.14,

2011) (citing Wright v. Goord, 554 F.3d 255, 274 (2d Cir. 2009)).

Here, Flynn did not file any grievances or complaints against Alsante.  The record lacks any

evidence establishing why Alsante would file a false misbehavior report against Flynn, on

Wellenstein's behalf, beyond Flynn's conclusory allegations.  Without more, the evidence does

not present a genuine issue of material fact for a jury to resolve.  See Ciaprazi v. Goord, No.

9:02-CV-915 (GLS/DEP), 2005 WL 3531464, at *9 (N.D.N.Y. Dec. 22, 2005) (entering

summary judgment on retaliation claim where the plaintiff cited only past grievances filed

against corrections officers other than the officer who disciplined the plaintiff); see also Alicea

v. Maly, No. 9:12-CV-203 (MAD/TWD), 2015 WL 4326114, at *14 (N.D.N.Y. July 14, 2015);

Guillory v. Ellis, No. 9:11-CV-600 (MAD/ATB), 2014 WL 4365274, at *18 (N.D.N.Y. Aug. 29,

2014).  Accordingly, it is recommended that Defendants' motion for summary judgment and

dismissal of retaliation claims based upon this misbehavior report be granted.[19]

### iii.  August 24, 2015

On August 24, 2015, Wellenstein issued plaintiff a misbehavior report alleging that Flynn

---

[19]     See Footnote 17, supra.

threatened and verbally harassed him. Dkt. No. 20-6 at 12. Plaintiff contends that this misbehavior report was in retaliation for his August 20, 2015 and August 22, 2015 grievances. Am. Compl. ¶ 79. However, as Defendants note, during his deposition, plaintiff admitted that he "made a smart remark about [Wellenstein] selling flowers for a living," but that Wellenstein "took that to a whole different level." Dkt. No. 64-4 at 91, 93, 95. Thus, as plaintiff admitted to making the statement that is the basis for the August 24, 2015 misbehavior report, the evidence suggests that "plaintiff committed the most serious, if not all, of the prohibited conduct charged in the misbehavior report." Gayle, 313 F.3d at 682. Therefore, Defendants have established a non-retaliatory reason for the filing of the August 24, 2015 misbehavior report. See Hynes v. Squillace, 143 F.3d 653, 657 (2d Cir 1998) (concluding that plaintiff's admission of the underlying conduct established a "proper, non-retaliatory reason[ ] for filing the misbehavior report."). Accordingly, it is recommended that Defendants' motion on this ground be granted.

### C. Supervisory Liability

Defendants argue that Flynn's claims against Ward must be dismissed because Ward was not personally involved in any constitutional violations. Dkt. No. 64-6 at 20-23. Flynn does not allege, nor does the record support the conclusion that Ward directly participated in any alleged constitutional violations. Construing the Amended Complaint liberally, Flynn contends that Ward was personally involved in the alleged constitutional violations by denying his grievances.

Supervisory officials may not be held liable merely because they held a position of authority. See Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996). However, supervisory personnel may be considered "personally involved" if:

29

(1) the defendant participated directly in the alleged constitutional violation;

(2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong;

(3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom;

(4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or

(5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (citing Williams v. Smith, 781 F.2d 319, 323–24 (2d Cir. 1986)).

Writing letters and grievances to a defendant is insufficient to establish notice and personal involvement. Smart v. Goord, 441 F.Supp.2d 631, 643 (S.D.N.Y. 2006) ("Commissioner . . . cannot be held liable on the sole basis that he did not act in response to letters of protest sent by [plaintiff]. . . ."). Also, it is within the purview of a superior officer to delegate responsibility to others. See Vega v. Artus, 610 F.Supp.2d 185, 198 (N.D.N.Y. 2009) (finding no personal involvement where "the only involvement of the supervisory official was to refer the inmate's complaint to the appropriate staff for investigation") (citing Ortiz-Rodriguez v. N.Y. State Dep't of Corr. Servs., 491 F.Supp.2d 342, 347 (W.D.N.Y. 2007)).

"[I]t is well-established that the review, denial or affirmance of a denial of a grievance is insufficient to establish personal involvement." Perilla v. Fischer, No. 13-CV-398M, 2013 WL 5798557, at *7 (W.D.N.Y. Oct. 28, 2013) (citing inter alia Farrell v. Burke, 449 F.3d 470, 484 (2d Cir. 2006) (citation omitted)). "[W]hile personal involvement cannot be founded solely on

supervision, liability can be found if the official proactively participated in reviewing the administrative appeals as opposed merely to rubber-stamping the results." Molano v. Bezio, No. 10-CV-6481, 2012 WL 1252630, at *5 (W.D.N.Y. Apr.13, 2012) (citing Collins v. Ferguson, 804 F.Supp.2d 134, 140 (W.D.N.Y. 2011), Black v. Coughlin, 76 F.3d 72, 74–75 (2d. Cir. 1996)).

The record before the Court contains Superintendent responses related to six grievances. Dkt. No. 64-5 at 8, 17, 22-23, 29, 33, 38. As noted supra, the signature of the Superintendent who executed the response, in each instance, is illegible. See Part II(A)(1). In response to the May 6, 2015 grievance (MS-21970-15), the Superintendent concluded that, "[i]n this investigation, the grievant alleges that he is not being provided assistance with law library requests, his copies are purposely damaged and he is being retaliated against for filing complaints." Dkt. No. 64-5 at 22. Defendants argue that Ward was not involved in that grievance and attribute only two grievances to Ward: MS-22079-15 and MS 22200-15. Dkt. No. 64-6 at 22-23. While Defendants concede that additional grievances were appealed to the Superintendent, Defendants claim that the remaining grievance responses were not issued by Ward and thus, Ward was not involved in the decision-making process or investigation regarding these grievances. These arguments are asserted by counsel in the Memorandum of Law, but notably absent from the record is any affidavit or declaration from Ward. Without such evidence, a factual dispute exists as to whether Ward proactively participated in the decision-making process related to Flynn's grievances. As such, there is triable issue of material fact for a jury to resolve with respect to Ward's personal involvement in Wellenstein's alleged retaliatory conduct. See Celotex Corp., 477 U.S. at 323. Accordingly, Defendants' motion against Ward on this ground should be denied.

31

A different conclusion is reached however, with respect to Flynn's First Amendment claims based upon access to the courts.  Absent an underlying constitutional violation by a subordinate, there can be no supervisory liability.  Hernandez v. Keane, 341 F.3d 137, 145 (2d Cir. 2003); see Elek v. Inc. Vill. of Monroe, 815 F.Supp.2d 801, 808 (S.D.N.Y. 2011) (collecting cases for the proposition that "because plaintiff has not established any underlying constitutional violation, she cannot state a claim for 1983 supervisory liability"). As discussed supra, Flynn failed to raise an issue of material fact with respect to his First Amendment claim based upon access to courts.  Accordingly, the undersigned recommends that Defendants' motion for summary judgment and dismissal of Flynn's First Amendment claims against Ward based upon access to the courts be granted.

### D. Exhaustion

As an alternative ground for dismissal of the retaliation claims, Defendants contend that the motion for summary judgment must be granted because Flynn failed to exhaust his administrative remedies through available grievance procedures.  See Dkt. No. 64-2 at 23-26. The PLRA requires that a prisoner exhaust any administrative remedies available to him or her before bringing an action for claims arising out of his or her incarceration.  See Porter v. Nussle, 534 U.S. 516, 524 (2002); see also Woodford v. Ngo, 548 U.S. 81, 82 (2006). "The PLRA's exhaustion requirement is designed to 'afford [ ] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'" Johnson v. Testman, 380 F.3d 691, 697 (2d Cir. 2004) (citing Porter, 534 U.S. at 524-25).  The exhaustion requirement applies "'to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some

other wrong.'" Mauldin v. Kiff, No. 11-CV-107-A, 2014 W L 2708434, at *4 (W.D.N.Y. June 16, 2014) (quoting Porter, 534 U.S. at 532). Further, the exhaustion requirement applies even where the prisoner seeks relief not available in the administrative grievance process, such as money damages. Porter, 534 U.S. at 524. To exhaust administrative remedies, the inmate must complete the full administrative review process set forth in the rules applicable to the correctional facility in which he or she is incarcerated. See Jones v. Bock, 549 U.S. 199, 218 (2007) (internal citation omitted).

"The mere fact that an inmate plaintiff filed some grievance prior to filing suit is not enough. The grievance must also have related to the subject matter of the federal lawsuit." Allah v. Poole, 506 F. Supp. 2d 174, 180 (W.D.N.Y. 2007) (citation omitted). The scope of a plaintiff's federal claim may not exceed that of the grievance. Donahue v. Bennett, No. 02-CV-6430, 2004 WL 1875019, at *8 (W.D.N.Y. Aug. 17, 2004).

Although the Supreme Court has deemed exhaustion mandatory, the Second Circuit has recognized that "certain caveats apply." Ruggiero v. County of Orange, 467 F.3d 170, 175 (2d Cir. 2006) (citation omitted). Until recently, courts in this district followed a three-part test established by the Second Circuit in Hemphill v. New York, 380 F.3d 680, 686 (2d Cir. 2004). Under the test established in Hemphill, a plaintiff's failure to exhaust could be excused if the plaintiff established that his or her failure to exhaust was justified by "special circumstances." Id. However, the Supreme Court recently held that "[c]ourts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement." Ross v. Blake, 136 S. Ct. 1850, 1862 (2016). As such, the special circumstances exception previously promulgated by the Second Circuit in Hemphill, is no longer consistent with the statutory requirements of the PLRA. See Williams v. Priatno, 829 F.3d 118, 123 (2d Cir. 2016).

33

Although the Supreme Court's decision in Ross eliminates the "special circumstances" exception promulgated by Hemphill, courts must still consider the PLRA's "textual exception to mandatory exhaustion." Ross, 136 S. Ct. at 1858. Under this exception, courts must determine whether administrative remedies were "available" to a prisoner. Id. The Supreme Court identified three circumstances where administrative remedies may be unavailable to a prisoner. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. at 1859 (citing Booth v. Churner, 532 U.S. 731, 736, 738 (2001)). "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." Id. Lastly, administrative remedies are unavailable where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 1860.

Here, there is no dispute that at all relevant times, DOCCS had in place a three-step inmate grievance program. N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5 (2015). First, the inmate must file a complaint with an inmate grievance program ("IGP") clerk within twenty-one days of the alleged action. Id. § 701.5(a)(1). An IGP representative has sixteen calendar days to informally resolve the issue. Id. § 701.5(b)(1). If no informal resolution occurs, the full IGP committee must hold a hearing within sixteen days of receipt of the grievance and must issue a written decision within two working days after the conclusion of the hearing. Id. §§ 701.5(b)(2)(i)-(ii). If the determination is unfavorable to the inmate, the inmate may appeal the IGRC's determination to the facility superintendent within seven calendar days of receipt of the determination. Id. § 701.5(c)(1). If the superintendent's determination is unfavorable to the inmate, the inmate may appeal to the Central Office Review Committee ("CORC") within seven

days after receipt of the superintendent's determination.  Id. §§ 701.5(d)(i)-(ii).  CORC must "review each appeal, render a decision on the grievance, and transmit its decision to the facility, with reasons stated, for the [inmate], the grievance clerk, the superintendent, and any direct parties within thirty (30) calendar days from the time the appeal was received."  Id. § 701.5(d)(3)(ii).

Flynn testified that he was familiar with the grievance process and filed "numerous" grievances in 2015.  Dkt. No. 64-4 at 41-44.  As discussed supra, the record contains copies of six (6) grievances that Flynn appealed to CORC and thus, Defendants concede, exhausted.[20]  The record contains a certification attesting to the veracity of the grievance records.  Dkt. No. 64-5 at 2.

With respect to the exhausted grievances, Defendants argue that Flynn's retaliation claims were not properly exhausted because these grievances did not contain allegations that Wellenstein retaliated against Flynn when he assaulted him and issued misbehavior reports. Dkt. No. 64-6 at 25-26.   Defendants have not provided an affidavit from any DOCCS' employee with personal knowledge to support Defendants' contention that there is no connection between Flynn's grievances and the matters raised in the federal court complaint. Once again, Defendants rely upon the unsupported statements by counsel without evidentiary support.  Upon review of the record, the undersigned finds that has exhausted his remaining retaliation claims.  In the May 6, 2015 grievance, Flynn claimed that Wellenstein provided distorted copies of court forms and asserted, "[t]his is the 3rd time he has deliberately ruined

---

[20]        Flynn filed additional grievances, but the record does not contain proof that these grievances were exhausted.  To wit, Flynn testified that "at least two or three" of his grievances "made it to Albany."  Dkt. No. 64-4 at 46.  Flynn could not recall which grievances were appealed and testified that while nothing prevented him from exhausting of all his grievances, he did not appeal certain grievances because they were "repetitive."  Id.

copies to the point they are unusable.  This is deliberate harassment and the denial of legal copies." Dkt. No. 64-5 at 21.  In the May 8, 2015 grievance, Flynn claimed:

> On 5/8/15 at 5:05 p.m. C.O Wellenstein came to my cell and started kicking the cell door and slaming [sic] feed up door, verbally harassing me and making numerous threats.  For months C.O. Wellenstein has been harassing me.  As a result of his harassment I am afraid to use the law library services and request legal material.

Dkt. No. 64-5 at 19.

On July 14, 2015, the Superintendent responded and categorized these claims as "retaliation" claims in response to filing prior complaints.  Dkt. No. 64-5 at 22.  The Superintendent conducted an investigation and interviewed Wellenstein.  Id.

In the August 7, 2015 grievance, Flynn reiterated his harassment complaints claiming that, "Wellenstein has refused to make copies in retaliation for the 2 most recent grievances against him.  His refusal to make copies is harassment[.]"  Dkt. No. 64-5 at 26-28.  On August 27, 2015, the Superintendent issued a response finding that the grievant "has not substantiated his claim that he has been the victim of harassment by staff[.]"  Id. at 29.  The Superintendent noted that Wellenstein denied the allegations.  Dkt. No. 64-5 at 29.  In his Appeal Statement, Flynn argued that Wellenstein continues to deter him from using the law library "in retaliation for filing grievances[.]"  Id.  On October 21, 2015, CORC issued a decision quoting Directive #4040, Section 701.6(b) related to prohibited "reprisals" against an inmate who utilizes the grievance process.[21]  Id. at 24.

---

[21]      Section 701.6(b) provides:

Reprisals prohibited. No reprisals of any kind shall be taken against an inmate or employee for good faith utilization of this grievance procedure. An inmate may pursue a complaint that a reprisal occurred through the grievance mechanism. A grievant shall not receive a misbehavior report based solely upon an allegedly false statement made by the inmate to the grievance committee.

Drawing all inferences in Flynn's favor, the Court finds that the facts alleged in Flynn's grievances encompass the facts set forth in the Amended Complaint. See Curry v. Fischer, No. 02 Civ.4477, 2004 WL 766433, at *8 (S.D.N.Y. Apr. 12, 2004). Accordingly, it is recommended that Defendants' Motion for Summary Judgment, insofar as it raises the affirmative defense of nonexhaustion, be denied.

## IV. Conclusion

**WHEREFORE**, based on the findings set forth above, it is hereby:

**RECOMMENDED**, that Defendants' motion for summary judgment (Dkt. No. 64) be **GRANTED IN PART**:

(1) Insofar as it seeks dismissal of Flynn's First Amendment access to the courts claims against Wellenstein and Ward;

(2) Insofar as it seeks dismissal of Flynn's retaliation claims against Wellenstein and Ward related to misbehavior reports issued on August 1, 2015, August 17, 2015, August, 24, 2015, November 12, 2015, November 18, 2015, and December 11, 2015;

(3) Insofar as it seeks dismissal of Flynn's First Amendment retaliation claims against Wellenstein and Ward for the April 30, 2015 assault; and

(4) Insofar as it seeks dismissal of Flynn's First Amendment retaliation claims against Wellenstein and Ward for threats,

the motion be **GRANTED**; and it is further

**RECOMMENDED**, that Defendants' Motion for Summary Judgment (Dkt. No. 64) be

---

N.Y. COMP. CODES R. & REGS. tit. 7, § 701.6.

**DENIED IN PART**:

(1) Insofar as it seeks dismissal of Flynn's First Amendment retaliation claims against Wellenstein and Ward based on access to courts and the misbehavior report issued on April 30, 2015; and

(2) Insofar as it seeks dismissal of plaintiff's retaliation claims for access to the courts and the April 30, 2015 misbehavior report due to nonexhaustion,

the motion be **DENIED**; and it is

**ORDERED**, that copies of this Report-Recommendation and Order be served on the parties in accordance with the Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72.[22]

Dated: June 6, 2018
Albany, New York

Christian F. Hummel
U.S. Magistrate Judge

---

[22] If you are proceeding pro se and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Id. § 6(a)(1)(C).